# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Mutual Bank, | ) ) ) |
| Plaintiff, | ) Case No. 11-cv- 7590 ) |
| v. | ) JURY DEMANDED ) |
| AMRISH MAHAJAN, ARUN VELUCHAMY, ANU VELUCHAMY, STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY, PAUL PAPPAGEORGE, RICHARD BARTH, THOMAS PACOCHA, JAMES REGAS, and REGAS, FREZADOS & DALLAS LLP, | ) Judge Virginia Kendall ) ) ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT TOM PACOCHA'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**

- i -

**TABLE OF CONTENTS**

**FACTUAL BACKGROUND** ........................................................................................................ 1

**LEGAL STANDARD** ................................................................................................................. 2

**ARGUMENT** ................................................................................................................................ 3

I. THE NEGLIGENCE AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO STATE A CLAIM. ............................................................................................................ 3

    A. The Business Judgment Rule Bars the Negligence and Breach of Fiduciary Duty Claims. ................................................................................................................ 3

    B. The FDIC's Assertions Do Not Support Any Inference of Negligence, Gross Negligence or Breach of Fiduciary Duty. ............................................................ 3

        *1. The Complaint Lacks Facts Indicating that Mr. Pacocha Ignored Regulatory Directives or Warnings.* ............................................................ 4

            *a. Mutual's Regulatory History* ............................................................ 6

            *b. The Regulators Similarly Approved Mutual Bank's Loan Concentrations and Loan Policies During the Time Periods Relevant to the Approval of the Loans Identified in the Complaint.* 9

        *2. The Complaint Allegations Fail to Give Notice of Any Specific Regulatory Warning Mr. Pacocha Allegedly Ignored.* ................................................ 11

    C. The Allegations Do Not Support an Inference that Mr. Pacocha Proximately Caused the Alleged Loan Losses. ....................................................................... 12

    D. The Gross Negligence Claim Fails as a Matter Of Law and Is Insufficiently Plead Under FIRREA .................................................................................................. 13

II. THE FIDUCIARY DUTY CLAIM IS DUPLICATIVE. ................................................. 13

**CONCLUSION** .......................................................................................................................... 14

*CHI 61,979,818*

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 2, 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ passim

*E.E.O.C. v. Concentra Health Servs., Inc.*,
  496 F.3d 773 (7th Cir. 2007) ..................................................................................................... 3

*E.E.O.C. v. Sears, Roebuck & Co.*,
  857 F.Supp. 1233 (N.D. Ill. 1994) ............................................................................................. 2

*ExxonMobil Oil Corp. v. AMEX Constr. Co.*,
  70 F. Supp. 2d 94 (N.D. Ill. 2010) ........................................................................................... 13

*FDIC ex rel. Wheatland Bank v. Spangler*,
  No. 10-CV-4288, 2011 WL 6754022, at *11 (N.D. Ill. Dec. 22, 2011) .................................. 13

*FDIC v. Saphir*,
  No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011) ......................................... 13

*General Elec. Cap. Corp. v. LeaseResolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ................................................................................................... 6

*Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*,
  385 F.3d 737 (7th Cir. 2004); .................................................................................................. 13

*Reger Dev., LLC v. National City Bank*,
  592 F.3d 759 (7th Cir. 2010) ..................................................................................................... 2

*RTC v. Franz*,
  909 F. Supp. 1128 (N.D. Ill. 1995) .......................................................................................... 13

*Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*,
  No. 04 C 2926, 2004 WL 2359233, at *1 (N.D. Ill. Oct. 19, 2004) ........................................ 13

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) ................................................................................................. 4, 5

*Wojtas v. Capital Guardian Trust Co.*,
  477 F.3d 924 (7th Cir. 2006) ................................................................................................... 13

**State Cases**

*Neade v. Portes*,
  739 N.E.2d 496 (Ill. 2000); ..................................................................................................... 13

*Wallach v. Billings*,
  115 N.E. 382 (Ill. 1917) .......................................................................................................... 12

**Federal Rules**

Fed. R. Evid. 201(b) ................................................................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................................................................ 1, 2

Defendant Thomas Pacocha ("Mr. Pacocha") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Federal Deposit Insurance Corporation's ("FDIC" or "Plaintiff") Complaint. As set forth below, the Complaint fails to state any claim upon which relief can be granted and fails to meet the pleading standard as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). For its claims against Mr. Pacocha, the FDIC offers conclusory statements about failed loans rather than providing a sufficient factual basis to support any claim of negligence, gross negligence or breach of fiduciary duty. Further, none of the claims are pled sufficiently to overcome the business judgment rule and are barred by the Illinois Banking Act. Finally, the FDIC's negligence and breach of fiduciary duty claims are duplicative. For these reasons, the Complaint must be dismissed.

## FACTUAL BACKGROUND

For its claims against Mr. Pacocha, the FDIC groups him with one other former officer, Richard Barth, (collectively, the "Officer Defendants") who were members of Mutual Bank's ("Mutual" or "Bank") Senior Officers' Loan Committee ("SOLC").[1] The Complaint, however, does not specify which Officer Defendants engaged in which allegedly wrongful actions that resulted in losses to the Bank. Nor does the FDIC parse out which allegedly wrongful actions are attributable to the eight Director Defendants as opposed to the Officer Defendants.

The Complaint alleges wrongdoing against Mr. Pacocha in that he approved a high concentration of risky loans, failed to implement appropriate practices or ignored existing Bank policies, ignored federal lending regulations, and disregarded regulator's warnings. (Compl., ¶¶

---

[1] Mr. Pacocha's Memorandum of Law in Support of His Motion to Dismiss the FDIC's Complaint incorporates by reference the memoranda of co-defendants Amrish Mahajan, Arun Veluchamy, Anu Veluchamy, Steven Lakner, Ronald Tucek, Patrick McCarthy, Paul Pappageorge, Richard Barth and James Regas in support of their respective motions to dismiss.

...

- 2 -

28-56.) The FDIC selectively identifies twelve "Loss Loans"—eight of which Mr. Pacocha allegedly "voted to approve"—that allegedly demonstrate how the foregoing wrongful actions resulted in losses to the Bank. (*Id.*, ¶¶ 57-108.) For approving the Loss Loans, the FDIC alleges that Mr. Pacocha was grossly negligent (Count I), breached his fiduciary duty (Count II), and was negligent under common law (Count III).

## LEGAL STANDARD

Dismissal for failure to state a claim is proper under Federal Rule of Civil Procedure 12(b)(6) where, as here, a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). As stated in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addition, the Court is not required to accept plaintiff's factual inferences to the extent that they are unsupported by the factual allegations of the complaint. *See E.E.O.C. v. Sears, Roebuck & Co.*, 857 F.Supp. 1233, 1236 (N.D. Ill. 1994). A plaintiff must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (957)). A complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d

773, 776 (7th Cir. 2007). The FDIC's generalized allegations of wrongdoing do not satisfy any of the necessary pleading standards, thus the Complaint must be dismissed.

## ARGUMENT

### I. THE NEGLIGENCE AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO STATE A CLAIM.

#### A. The Business Judgment Rule Bars the Negligence and Breach of Fiduciary Duty Claims.

Mr. Pacocha joins in Amrish Mahajan's Memorandum in Support of his Motion to Dismiss for his argument that the FDIC's claims are barred by the Business Judgment Rule.

#### B. The FDIC's Assertions Do Not Support Any Inference of Negligence, Gross Negligence or Breach of Fiduciary Duty.

The FDIC alleges generally that Mr. Pacocha was negligent, grossly negligent and breached his fiduciary duty by 1) approving the Loss Loans and 2) failing to heed alleged warnings from regulators. Mr. Pacocha joins in Amrish Mahajan's Memorandum in Support of his Motion to Dismiss for his argument that the FDIC did not sufficiently plead facts to support its negligence, gross negligence or fiduciary duties claims.

Moreover, the FDIC alleges that Mr. Pacocha violated Mutual's loan policies by allegedly "approving" the Loss Loans. In so doing, the FDIC acknowledges that Mr. Pacocha was a member of the SOLC. (Compl., ¶ 21.) But FDIC also acknowledges that any loan in excess of $1 million required approval by the Directors Loan Committee ("DLC") and could not be approved solely by the SOLC. (*Id.*, ¶ 36.) Mr. Pacocha was not a director or member of the DLC, and the Complaint does not allege otherwise. Thus, to the extent the FDIC attributes losses related to the eight Loss Loans at issue—all of which were in excess of $1 million—to Mr. Pacocha, as a member of the SOLC, he did not, nor did the SOLC itself, have the authority to

approve those loans. Such approval was required by the DLC. The contradictory allegations that Mr. Pacocha "approved" certain loans but did not hold a position at Mutual that afforded him the opportunity to approve the loans summarily defeats these claims.

### 1. *The Complaint Lacks Facts Indicating that Mr. Pacocha Ignored Regulatory Directives or Warnings.*

As an initial matter, the Complaint is void of any allegations that Mr. Pacocha actually received any of the examination reports so heavily relied upon by the FDIC. The Complaint only alleges that the reports were "delivered to the Board of Directors" (Compl., ¶¶ 39, 42, 46, 49), with no allegation that Mr. Pacocha (who did not serve on Mutual's board) received or reviewed them. The FDIC, nonetheless, alleges that Defendants—including Mr. Pacocha—ignored the recommendations contained therein. (Compl., ¶¶ 41, 45, 48.) These type of conclusory allegations do not satisfy the federal pleading standards. *Iqbal*, 129 S.Ct. at 1949.

In the Complaint, the FDIC alleges that Mutual's failure resulted from the failure to correct deficiencies identified and described by regulators in certain Reports of Examination[2] ("ROEs") prepared by the FDIC and the Illinois Department of Financial and Professional Regulations ("IDFPR"). (Compl., ¶¶ 38-56.) This Court can consider the ROEs, which are filed contemporaneously herewith under seal in support of the motion to dismiss, because the documents are referred to in the FDIC's complaint and central to the FDIC's allegations. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (collecting cases). A review of Mutual's ROEs, and the ratings assigned by the regulators, show that these allegations are wholly without factual support.

---

[2] The respective ROEs have been filed with the Court under seal pursuant to the Court's Order dated January 13, 2012, as Exhibits to the Memorandum in Support of the Outside Directors' Motion to Dismiss.

- 4 -

CHI 61,979,818

The regulators conducted full scope risk management examinations each year from 2004-2008. The 2008 examination, however, was conducted in June 2008, and was not delivered to Mutual's Board of Directors until July 30, 2008. (Compl., ¶ 49.) Therefore, the contents of that examination, and the following visitation that occurred in 2009, are largely, if not entirely, irrelevant to the allegations against Mr. Pacocha with respect to the loans that form the basis for the FDIC's claimed damages. Similarly, the contents of the 2008 examination (*id.*, ¶¶ 49-52) and the January 2009 Visitation (*id.*, ¶¶ 53-56), cannot form the basis for any allegation of "failure to heed regulatory warnings" because neither the Board of Directors nor Mr. Pacocha had knowledge of those reports, or the FDIC's findings and conclusions set forth in those reports, at the time that the Board voted to approve the loans identified in Paragraphs 57 through 108. The loans were approved, according to the FDIC, anywhere from May 2005 through March 2008. (*Id.*, ¶¶ 62-108.)

Therefore, the ONLY regulatory warnings that can form the basis for any claim by the FDIC relating to the loans identified in the Complaint are the examination findings and conclusions contained in the ROEs and provided to Mr. Pacocha *prior to* any action on Mr. Pacocha's part regarding the loans. Aside from the deficiencies associated with Mr. Pacocha's loan approval authorization being below the level of the subject loans, and the fact that the FDIC does not allege Mr. Pacocha reviewed or should have reviewed the ROEs, the FDIC's failure to identify with specificity the "regulatory warnings" that Mr. Pacocha allegedly "ignored" with respect to the loans is not a minor flaw to the Complaint. It is also a patent violation of Rule 8, the fundamental requirement of notice pleading, and the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A review of what the FDIC in fact told Mutual during the relevant time period, up

through May 2008, which was relied upon by the Board of Directors, confirms the misleading nature, inaccuracies, and unfair nature of the claims asserted against Mr. Pacocha in this action.

### a. Mutual's Regulatory History.

Between December 2004 and June 2008, the regulators provided constant ongoing supervision of Mutual. According to the Material Loss Review of Mutual Bank ("MLR") prepared by the Officer of Inspector General, over this 3-1/2 year time frame, the regulators conducted five onsite full scope risk management examinations, four onsite visitations and nine offsite reviews of Mutual.[3] (MLR at 12-14.) In other words, the regulators reviewed the condition of the Bank approximately five times per each year. (*Id.*) At the conclusion of each full scope risk examination of the Bank, the regulators assigned two types of ratings to the Bank: an overall composite rating and CAMELS component ratings.[4] Following every single full-scope examination during the years 2004 through 2007 (which is all of the examinations conducted prior to the last loan identified in the Complaint being approved), the regulators

---

[3] A courtesy copy of the MLR is provided to the Court as Exhibit 3 to the Outside Directors' Memorandum in Support of their Motion to Dismiss. The Court can take judicial notice of the MLR, along with the other FDIC publications of public record cited herein, because the MLR is published by the Office of Inspector General, Federal Deposit Insurance Corporation, and is of public record, at http://www.fdicoig.gov/2010reports.asp. See Fed. R. Evid. 201 and General Elec. Cap. Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080-81 (7th Cir. 1997) (Court can take judicial notice of documents of public record on a motion to dismiss). However, Mr. Pacocha emphasizes that only those portions of the public record that are not subject to reasonable dispute can be judicially noticed. Fed. R. Evid. 201(b)). Other than the contents of the MLR that are expressly cited to by Mr. Pacocha herein, Mr. Pacocha adamantly disputes the remainder of the contents to the MLR and therefore those facts are not susceptible to judicial notice.

[4] Financial institution regulators and examiners use the Uniform Financial Institutions Rating System (UFIRS) to evaluate a bank's performance in six component areas represented by the CAMELS acronym as follows: Capital adequacy, Asset quality, Management practices, Earnings performance, Liquidity position, and Sensitivity to market risk. Each component, and an overall composite score, is assigned a rating of 1 through 5, with 1 having the least regulatory concern and 5 having the greatest concern.

assigned Mutual an overall composite rating of 2, the second highest composite rating. A composite "2" rated bank is defined in the UFIRS as follows:

> Financial institutions in this group are fundamentally sound. For a financial institution to receive this rating, generally no component rating should be more severe than 3. Only moderate weaknesses are present and are well within the board of directors' and management's capabilities and willingness to correct. *These financial institutions are stable and are capable of withstanding business fluctuations. These financial institutions are in substantial compliance with laws and regulations. Overall risk management practices are satisfactory relative to the institution's size, complexity, and risk profile. There are no material supervisory concerns* and, as a result, the supervisory response is informal and limited. (emphasis added)

In each of the years 2004 through 2007, the regulators similarly assigned a component rating of 2 to Mutual's management (as well as almost all other component areas throughout these years: capital, assets, earnings, liquidity and sensitivity to market risk). The chart below sets forth all ratings assigned by the regulators to the Bank during this time frame:

| Examination Start Date | Agency | Supervisory Ratings (UFIRS) | Supervisory Action |
|---|---|---|---|
| May 7, 2004 | FDIC | 222222/2 | None. |
| May 2, 2005 | IDFPR | 222222/2 | None. |
| May 30, 2006 | FDIC | 222222/2 | None. |
| January 29, 2007 (Visitation) | FDIC | N/A | The purpose of this visitation was to assess asset quality. |
| May 29, 2007 | Joint | 23222/2 | None. |

As noted above, the FDIC rated the management of Mutual a 2 in the 2004, 2005, 2006 and 2007 full scope examinations. (MLR at 13.) The FDIC has defined a 2-rated bank management team in its Risk Management Manual as follows:

> A rating of 2 indicates satisfactory management and board performance and risk management practices relative to the institution's size, complexity, and risk profile. Minor weaknesses may exist, but are not material to the safety and soundness of the institution and are being addressed. In general, significant risks and

>problems are effectively identified, measured, monitored, and controlled.

*See* "FDIC Risk Management Manual," § 1.1 – Basic Examination Concepts and Guidelines. The "management" component rating is probably the most important of the CAMELS component ratings. FDIC's Risk Management Manual of Examination Policies describes its importance as follows:

>The ability of management to respond to changing circumstances and to address the risks that may arise from changing business conditions, or the initiation of new activities or products, is an important factor in evaluating a financial institution's overall risk profile and the level of supervisory attention warranted. *For this reason, the management component is given special consideration when assigning a composite rating.* The ability of management to identify, measure, monitor, and control the risks of its operations is also taken into account when assigning each component rating.

(*Id.*) (emphasis added) The FDIC Risk Management Manual sets forth in great detail the many areas assessed by the regulators in order to accurately assign a component rating to the management factor, including the following:

- The level and quality of oversight and support of all institution activities by the board of directors and management.

- The ability of the board of directors and management, in their respective roles, to plan for, and respond to, risks that may arise from changing business conditions or the initiation of new activities or products.

- The adequacies of, and conformance with, appropriate internal policies and controls addressing the operations and risk of significant activities.

- The accuracy, timeliness, and effectiveness of management information and risk monitoring systems appropriate for the institution's size, complexity, and risk profile.

- The adequacy of audits and internal controls to: promote effective operations and reliable financial and regulatory reporting;

- 8 -

- safeguard assets; and ensure compliance with laws, regulations, and internal policies.

- Compliance with laws and regulations.

- Responsiveness to recommendations from auditors and supervisory authorities.

- Management depth and succession.

- The extent that the board of directors and management is affected by, or susceptible to, dominant influence or concentration of authority.

- Reasonableness of compensation policies and avoidance of self-dealing.

- Demonstrated willingness to serve the legitimate banking needs of the community.

- The overall performance and risk profile of the institution.

(*Id.*) (emphasis added) Thus, in arriving at the conclusion that the Bank's management deserved a "2" rating in 2004, 2005, 2006 and 2007, the regulators reviewed and considered the level of oversight of all bank activities by the Board of Directors and management, the adequacy of Mutual's loan policies and controls, the conformance of bank management to the loan policies and controls, the responsiveness of the Board of Directors and management to recommendations from auditors and supervisory authorities, and the overall condition of the Bank.

> b. *The Regulators Similarly Approved Mutual Bank's Loan Concentrations and Loan Policies During the Time Periods Relevant to the Approval of the Loans Identified in the Complaint.*

Just as the FDIC highly rated Mutual and its management team during the relevant years, the FDIC gave similarly favorable ratings of "2" relating to the quality of Mutual's assets during the time periods relevant to the lending decisions identified in the Complaint. The Complaint alleges that Mutual rapidly grew, primarily through CRE and ADC loans, from 2004 through

2009. (Compl., ¶ 28.) The Complaint alleges that during this time period "regulators repeatedly warned" that Mutual's management practices and staffing were inadequate (*Id*., ¶ 31), an allegation which is false and misleading when taken out of context of the entirety of the 2004 through 2007 ROEs.

The FDIC knew and noted, for years, that Mutual specialized in CRE loans, which included ADC loans. (MLR at 2.) Mutual's CRE and ADC concentrations were largely consistent from 2005 to 2009, and proportional in each year when viewed with respect to the composition of Mutual's loan portfolio. (*Id.*, at 8-9.) ADC loans as a percent of total loans was 25%, 29%, 24%, 23%, and 22%, respectively, during the years 2005 through 2009. (*Id*.) Similarly, CRE loans as a percent of total loans was 49%, 48%, and 50%, respectively, during the years 2007 through 2009. (*Id*.) With those levels of CRE and ADC concentrations in its loan portfolios, Mutual Bank received a 2 rating from 2004 through 2006 in the categories of asset quality, management, liquidity, and sensitivity to risk. (MLR at 13.) In 2007, when the asset quality component rating decreased from a 2 to a 3, it was primarily due to an increase in adversely classified assets. (*Id*., at 16.)

With respect to Mutual's loan policy, the FDIC does not identify any flaws or errors within the loan policy itself, a policy that the FDIC reviewed and approved for years. (*See* Compl. ¶¶ 35-37.) Mutual's loan policy (which is considered comprehensive by the FDIC) is silent regarding the use of interest reserves, a silence which received no warnings or recommendations for change by the FDIC during the time periods relevant to the allegations in the Complaint. (MLR at 5.) The only criticism regarding interest reserves is contained in the after-the-fact MLR (the MLR states that the policy should have provided guidelines on the acceptable usage of interest reserves). (*Id.*)

- 10 -

2. *The Complaint Allegations Fail to Give Notice of Any Specific Regulatory Warning Mr. Pacocha Allegedly Ignored.*

In stark contrast to its high ratings of both Mutual and its management in 2004, 2005, 2006 and 2007—in each of the actual examinations relied upon by Defendants prior to taking any action regarding each of the Loss Loans—in 2011 the FDIC incredibly alleges that "Defendants were repeatedly warned by state and federal bank examiners of the significant weaknesses in Mutual Bank's lending practices. *Defendants ignored these warnings.*" (Compl. ¶ 38.) The FDIC goes on to allege in paragraphs 39-48 of the Complaint that Defendants— including Mr. Pacocha—ignored regulatory warnings and recommendations made in 2005, 2006, and 2007. If that were the case, then the FDIC surely would not have rated Mutual a composite 2 and its management a 2, let alone given equally high ratings to the Bank's capital, its asset quality, its earnings, its liquidity and its sensitivity to market risk because to do so would violate its own well-established internal policies and procedures. The regulators' own ratings of the Bank and of its management—made following extensive and ongoing reviews of the Bank *at the time and not in hindsight*—directly defeat the FDIC's allegations in 2011 that Mr. Pacocha "ignored" regulatory recommendations.

The regulators' opinions about Mutual's financial condition and its management did not change until the June 2, 2008 examination (after the DLC had already approved each loan identified in the Complaint). In the late spring and early summer 2007, the commercial and residential real estate market experienced a severe and unexpected contraction and loss of liquidity, resulting in what is now referred to as the "Great Recession." Only after the sudden collapse of the real estate markets, did the regulators downgrade Mutual's composite rating and management component rating—for the first time in years—from a 2 to a 4. (MLR at 13.) The

- 11 -

MLR acknowledged that the "deteriorated economic conditions" contributed to the deterioration in Mutual's loan portfolio. (*Id.*, at 1.) The impact on Mutual of the "Great Recession"—not as the result of any action or inaction by Mr. Pacocha—was swift and severe.

As a consequence of the nationwide turmoil in real estate markets and the general weakness of the national economy, the Bank's financial condition became untenable in 2009. None of these events, however, which in fact caused Mutual's failure, can be reasonably or fairly attributed to Mr. Pacocha. Nor does the FDIC allege any plausible basis upon which Mr. Pacocha could be the cause in fact of the "losses" identified in the Complaint, all of which were approved by the DLC prior to June 2, 2008 (the date of the FDIC's 2008 ROE). Any purported decisions made by Mr. Pacocha regarding the loans—which were then submitted to the DLC—were made during time periods when the FDIC was not only supervising, but highly rating, all aspects of Mutual and its management team. For these reasons, Counts I, II, and III must be dismissed against Mr. Pacocha, in their entirety and with prejudice.

  **C.  The Allegations Do Not Support an Inference that Mr. Pacocha Proximately Caused the Alleged Loan Losses.**

The Complaint is also deficient because it fails adequately to allege that Mr. Pacocha's conduct proximately caused any loss, a required element of any negligence, gross negligence and breach of fiduciary duty claim. *Wallach v. Billings,* 115 N.E. 382 (Ill. 1917) (bank director is liable only if failure to act proximately caused the loss). To demonstrate proximate cause, a plaintiff must establish "what was apparent to the defendant at the time," rather than "what may appear through the exercise of hindsight." *Zahl v. Krupa,* 927 N.E.2d at 1023 (citation omitted). As set forth above, the Complaint fails to allege sufficient facts that Mr. Pacocha knew at the time of the lending decisions that his actions would in fact result in losses to the Bank. Nor does

- 12 -

the Complaint explain how the specific facts known to Mr. Pacocha proximately resulted in losses.

### D. The Gross Negligence Claim Fails as a Matter Of Law and Is Insufficiently Plead Under FIRREA

"Illinois law does not recognize gross negligence as a separate cause of action." *ExxonMobil Oil Corp. v. AMEX Constr. Co.*, 70 F. Supp. 2d 942, 974 n.9 (N.D. Ill. 2010). That said, gross negligence is cognizable under FIRREA (Financial Institutions Reform, Recovery and Enforcement Act), however, gross negligence has been interpreted by Illinois courts as constituting "recklessness." *RTC v. Franz*, 909 F. Supp. 1128, 1139 (N.D. Ill. 1995))" . Mr. Pacocha joins in the Veluchamy Defendants' Memorandum in Support of their Motion to Dismiss for their argument that the FDIC fails to properly allege facts that Mr. Pacocha was grossly negligent.

## II. THE FIDUCIARY DUTY CLAIM IS DUPLICATIVE.

The FDIC's "negligence claim [is] nothing more than a reiteration of the fiduciary duty claim with a negligence label attached to it." *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006). Mr. Pacocha is alleged to have breached his fiduciary duty (*i.e.* to have acted negligently) and the conduct at issue is the same in both counts, and are thus duplicative. *See FDIC ex rel. Wheatland Bank v. Spangler,* No. 10-CV-4288, 2011 WL 6754022, at *11 (N.D. Ill. Dec. 22, 2011); *Neade v. Portes,* 739 N.E.2d 496, 500-02 (Ill. 2000); *Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.,* 385 F.3d 737, 744 (7th Cir. 2004); *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.,* 2004 WL 2359233, at *1 (N.D. Ill. Oct. 19, 2004); *FDIC v. Saphir,* No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1,

- 13 -

- 14 -

2011) (dismissing duplicative negligence claims). Accordingly, the breach of fiduciary duty claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Pacocha respectfully requests that the Court dismiss the FDIC's claims against him with prejudice.

Dated: January 18, 2012

                                            Respectfully submitted,

                                            /s/ Steven M. Malina
                                            One of the Attorneys for
                                            Defendant Thomas Pacocha

Steven M. Malina (ARDC # 6196571)
Beth A. Black (ARDC # 6257729)
Shannon T. Murphy (ARDC # 6300397)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
PH: (312) 460-8400
FAX: (312) 460-8435
malinas@gtlaw.com
blackb@gtlaw.com
murphys@gtlaw.com