**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Mutual Bank, | ) ) ) | Case No. 11-cv- 7590 |
| Plaintiff, | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| AMRISH MAHAJAN, ARUN VELUCHAMY, ANU VELUCHAMY, STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY, PAUL PAPPAGEORGE, RICHARD BARTH, THOMAS PACOCHA, JAMES REGAS, and REGAS, FREZADOS & DALLAS LLP, | ) ) ) ) ) ) ) ) | Judge Virginia Kendall |
| Defendant. | ) ) | |

**DEFENDANT AMRISH MAHAJAN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I. THE NEGLIGENCE AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO STATE A CLAIM. ............................................................................. 3

    A. The Business Judgment Rule Bars the Negligence  and Breach of Fiduciary Duty Claims. ................................................................................................. 3

    B. The FDIC's Assertions do not Support any Inference of Negligence, Gross Negligence or Breach of Fiduciary Duty ............................................. 7

        1. *The Complaint Lacks Sufficient Allegations that Mr. Mahajan Knew During the Approval Process the Loss Loans Would Fail.* ...................... 8

            a. *The FDIC's conclusory allegations that Mutual's lending policies were insufficient do not support its claims* .......................................... 8

            b. *FDIC guidelines support Mutual's lending practices* ....................... 10

            c. *Use of interest reserves does not support the FDIC's claims* ........... 11

        2. *The Complaint Lacks Facts Supporting an Oversight Failure Claim.* ..... 13

        3. *The Complaint Lacks Facts Indicating that Mr. Mahajan Ignored Regulatory Directives or Warnings.* ....................................................... 14

    C. The Allegations Do Not Support an Inference that Mr. Mahajan Proximately Caused the Alleged Loan Losses ................................................................ 14

    D. Mr. Mahajan Is Entitled to the Protection of the Illinois Banking Act ................. 15

    E. The Gross Negligence Claims Fail as a Matter Of Law and are Insufficiently Plead Under FIRREA .......................................................................... 15

II. THE FDIC FAILS TO SUFFICIENTLY ALLEGE FACTS THAT MR. MAHAJAN VIOLATED HIS DUTY OF LOYALTY BY APPROVING DIVIDEND PAYMENTS. ...................................................................................... 16

III. THE FDIC FAILS TO ALLEGE SUFFICIENT FACTS THAT MR. MAHAJAN PERMITTED WASTING OF CORPORATE ASSETS .................................. 16

    A. Count VI Is Legally Insufficient as the FDIC Fails to Plead that Any Fiduciary Duty Was Breached ................................................................................ 16

        1. *The FDIC Has Not Pled Facts Alleging a Violation of the Duty of Care* 18

        2. *The FDIC Fails to Plead Any Breach of the Duty of Loyalty* ................. 21

        3. *The FDIC Has Failed To Sufficiently Allege Proximate Cause* ............. 22

IV. THE FIDUCIARY DUTY CLAIMS ARE DUPLICATIVE ........................................... 23

CONCLUSION ............................................................................................................ 23

CHI 61,979,848

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ........................................................................ 2, 3, 18, 19, 21

*Barber v. First Midwest Bank*,
355 B.R. 103 (Bankr. C.D. Ill. 2006) ................................................. 11, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 1, 2, 3

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
No. 09-CV-1185, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) ................................. 12

*Beltran v. Brentwood North Healthcare Center, LLC*,
426 F.Supp.2d 827 (N.D.Ill. 2006) ..................................................... 22

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .............................................................. 7, 8, 9, 17

*Cohen v. Ayers*,
596 F.2d 733 (7th Cir. 1979) .............................................................. 17, 20

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) .............................................................. 3

*E.E.O.C. v. Sears, Roebuck & Co.*,
857 F.Supp. 1233 (N.D. Ill. 1994) ..................................................... 3

*ExxonMobil Oil Corp. v. AMEX Constr. Co.*,
70 F. Supp. 2d 942 (N.D. Ill. 2010) ................................................... 15

*FDIC ex rel. Wheatland Bank v. Spangler*,
No. 10-CV-4288, 2011 WL 6754022, at *10  (N.D. Ill. Dec. 22, 2011) ............................ 4, 23

*FDIC v. Benson*,
867 F. Supp. 512 (S.D. Tex. 1994) ..................................................... 4

*FDIC v. Bierman*,
2 F.3d 1424 (7th Cir. 1991) ................................................................ 18, 22

*FDIC v. Castetter*,
184 F.3d 1040 (9th Cir. 1999) ............................................................ 15

*FDIC v. Gravee*,
966 F. Supp. 622 (N.D. Ill. 1997) ...................................................... 7

*FDIC v. Saphir*,
No. 10 C 7009, 2011 WL 3876918, at *9  (N.D. Ill. Sept. 1, 2011) ............................... 23

*FDIC v. Stahl*,
854 F. Supp. 1565 (S.D. Fla. 1994) .................................................... 6

CHI 61,979,848

*First National Bank of Lincolnwood v. Keller*,
    318 F. Supp. 339 (N.D. Ill. 1970) .................................................................................. 5, 10

*HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*,
    517 F.3d 454, 457-58 (7th Cir. 2008) ...................................................................................... 6

*Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.*,
    385 F.3d 737 (7th Cir. 2004) ............................................................................................... 23

*In re ITT Corporation Derivative Lit.*,
    653 F. Supp. 2d 453 (S.D.N.Y. 2009) ...................................................................................... 5

*Labor Ready, Inc. v. Williams Staffing, LLC*,
    149 F.Supp. 2d 398, 415 n.14 (N.D. Ill. 2001) ....................................................................... 21

*Lavery v. Kearns*,
    792 F. Supp. 847 (D. Me. 1992) ............................................................................................ 11

*McRoberts v. Spaulding*,
    32 F.2d 315 (S.D. Ia. 1929) .................................................................................................. 6

*Mendelovitz v. Comdisco, Inc.*,
    No. 93 C 937, 1993 WL 367091 at *2 (N.D. Ill. Sept. 16, 1993)............................................. 4

*Murphy v. Cando*,
    1931 WL 3142 (Ill. App. Ct. 1931) ........................................................................................ 7

*Oakland County Employees' Retirement Sys. v. Massaro*,
    736 F.Supp.2d 1181 (N.D. Ill. 2010) ...................................................................... 6, 7, 16, 18

*Reger Dev., LLC v. National City Bank*,
    592 F.3d 759 (7th Cir. 2010) ................................................................................................. 2

*RTC v. Franz*,
    909 F. Supp. 1128 (N.D. Ill. 1995) ....................................................................................... 16

*Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*,
    No. 04 C 2926, 2004 WL 2359233, at *1 (N.D. Ill. Oct. 19, 2004) ........................................ 23

*Starrels v. First National Bank*,
    870 F.2d 1168 (7th Cir. 1989) ............................................................................................... 6

*Talton v. Unisource Network Services, Inc.*,
    No. 00 C 7967, 2004 WL 2191605, at *14 (N.D. Ill. Sept. 27, 2004)....................................... 3

*Venture Assocs. Corp v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ............................................................................................... 19

*Wojtas v. Capital Guardian Trust Co.*,
    477 F.3d 924 (7th Cir. 2006) ............................................................................................... 23

## <u>State Cases</u>

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ......................................................................................... 7, 18, 20

*In re 3ComCorp.*,
   No. C.A. 16721, 1999 WL 1009210, at *4 (Del. Ch. Oct. 25, 1999) ...................................... 21

*In re Walt Disney Co. Derivative Litig.*,
   906 A.2d 27, 74 (Del. 2006) .......................................................................................... 16

*Lowell Hoit & Co. v. Detig*,
   50 N.E.2d 602 (Ill. App. Ct. 1943) ................................................................................ 13

*Miller v. Thomas*,
   656 N.E.2d 89 (Ill. App. Ct. 1995) .................................................................................. 4

*Neade v. Portes*,
   739 N.E.2d 496 (Ill. 2000) ............................................................................................. 23

*Selcke v. Bove*,
   629 N.E.2d 747 (Ill. App. Ct. 1994) ................................................................................ 3

*Shaper v. Bryan*,
   864 N.E.2d 876 (Ill. App. Ct. 2007) ................................................................................ 4

*Sherman v. Ryan*,
   911 N.E.2d 378 (Ill. App. Ct. 2009) ............................................................................. 4, 21

*Spillyards v. Abboud*,
   662 N.E.2d 1358 (Ill. App. Ct. 1996) .............................................................................. 4

*Stamp v. Touche Ross & Co.*,
   636 N.E.2d 616 (Ill. App. Ct. 1993) ................................................................................ 4

*Veco Corp. v. Babcock*,
   611 N.E.2d 1054 (Ill. App. Ct. 1993) ............................................................................ 21

*Wallach v. Billings*,
   115 N.E. 382 (Ill. 1917) ............................................................................................. 5, 14

*Zahl v. Krupa*,
   927 N.E.2d 262 (Ill. App. Ct. 2010) ........................................................................... 13, 14

## State Statutes

205 ILCS § 5/16 ............................................................................................................. 15

## Federal Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 2

## Federal Regulations

12 C.F.R. Part 323 .......................................................................................................... 11

12 C.F.R. Part 365 ...................................................................................................... 10, 11

Defendant Amrish Mahajan ("Mr. Mahajan") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Federal Deposit Insurance Corporation's ("FDIC") Complaint. As set forth below, the Complaint fails to state any claim upon which relief can be granted and fails to meet the pleading standard as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The FDIC offers only conclusory allegations about failed loans, improper dividend payments, and expenditures it deems "wasteful," rather than providing a sufficient factual basis to support any claim of negligence, gross negligence, breach of duty of loyalty, or breach of fiduciary duty. Further, the claims are not plead sufficiently to overcome the business judgment rule and are barred by the Illinois Banking Act. Finally, the FDIC's negligence and breach of fiduciary duty claims are duplicative. As such, the Complaint must be dismissed.

## INTRODUCTION

For its claims against Mr. Mahajan, the FDIC casually groups him with seven other former directors (the "Director Defendants") who were board members of Mutual Bank ("Mutual" or "Bank") as well as members of the Directors' Loan Committee ("DLC").[1] The Complaint, however, does not specify which Director Defendants engaged in which allegedly wrongful actions that resulted in the claimed losses to the Bank.

The Complaint alleges four types of wrongdoing against Mr. Mahajan and the Director Defendants. (Compl. ¶ 2.) First, the FDIC alleges the Director Defendants approved a high concentration of risky loans, failed to implement appropriate practices or ignored existing Bank policies, ignored federal lending regulations, and disregarded regulator's warnings. (Compl., ¶¶

---

[1] Mr. Mahajan's Memorandum of Law in Support of His Motion to Dismiss the FDIC's Complaint incorporates by reference the memoranda of co-defendants Arun Veluchamy and Anu Veluchamy; Steven Lakner, Ronald Tucek, Patrick McCarthy, Paul Pappageorge (collectively "Outside Directors"); and Richard Barth and James Regas in support of their respective motions to dismiss.

28-56.)  The FDIC selectively identifies twelve "Loss Loans" that allegedly demonstrate how the foregoing wrongful actions resulted in losses to the Bank.  (*Id.*, ¶¶ 57-108.)

Second, Mr. Mahajan and the Director Defendants allegedly engaged in corporate waste by using Bank funds for personal or other improper expenses. (*Id.*, ¶¶ 109-113.)  Third, the FDIC alleges that the Director Defendants approved allegedly imprudent and unlawful dividend payments.  (*Id.*, ¶¶ 114-119.)  Fourth, the Complaint alleges that the Director Defendants failed to adequately supervise the Bank's operations. (*Id.*, ¶¶ 173-176.)

For approving the Loss Loans, the FDIC alleges that Mr. Mahajan and the Director Defendants were grossly negligent (Count I), breached their fiduciary duty (Count II), and were negligent under common law (Count III).  For approving the purportedly unlawful dividends, the Complaint alleges the Director Defendants breached their fiduciary duty (Count IV) and their duty of loyalty (Count V).  The Complaint also asserts that the Director Defendants breached their fiduciary duty by committing corporate waste (Count VI).  Lastly, for their failure to supervise, the Director Defendants allegedly  were grossly negligent (Count VII), breached their fiduciary duty and are guilty of ordinary negligence (Count VIII).

## **LEGAL STANDARD**

Dismissal for failure to state a claim is proper under Federal Rule of Civil Procedure 12(b)(6)where, as here, a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).  As stated in *Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addition, the Court is not required to accept plaintiff's factual inferences to the extent that they are unsupported by the factual allegations of the complaint. *See E.E.O.C. v. Sears, Roebuck & Co.*, 857 F.Supp. 1233, 1236 (N.D. Ill. 1994). A plaintiff must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (957)). A complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The FDIC's generalized allegations of wrongdoing do not satisfy any of the necessary pleading standards, thus the Complaint must be dismissed.

## ARGUMENT

## I.    THE NEGLIGENCE AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO STATE A CLAIM.

### A.  The Business Judgment Rule Bars the Negligence and Breach of Fiduciary Duty Claims.

Mr. Mahajan is entitled to the protections of the business judgment rule, which presumes "'that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interests of the corporation.'" *Talton v. Unisource Network Services, Inc.*, No. 00 C 7967, 2004 WL 2191605, at *14 (N.D. Ill. Sept. 27, 2004) (citation omitted). The business judgment rule applies to both directors and officers. *Selcke v. Bove,* 629 N.E.2d 747, 750 (Ill. App. Ct. 1994). Under Illinois law, "absent allegations of 'bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the

exercise of business judgment by corporate directors.'" *Stamp v. Touche Ross & Co.,* 636 N.E.2d 616, 621-22 (Ill. App. Ct. 1993) (citation omitted). Moreover, a complaint challenging a corporate decision by an officer or director must "present allegations that rebut the presumption created by the business judgment rule." *FDIC ex rel. Wheatland Bank v. Spangler,* No. 10-CV-4288, 2011 WL 6754022, at *10 (N.D. Ill. Dec. 22, 2011).

With the benefit of hindsight, the FDIC now questions the Bank's lending decisions and oversight, but it never alleges that any particular loan decision was not made in good faith at the time of the decision. The FDIC alleges no management self-dealing, corporate skullduggery or bad faith, and fails to overcome the business judgment rule. *See Stamp,* 636 N.E.2d at 621-22 (allegations that underwriting procedures, controls and director oversight were inadequate did not overcome business judgment rule).

Courts routinely dismiss complaints that fail to allege facts to overcome the business judgment rule. *Shaper v. Bryan,* 864 N.E.2d 876, 885 (Ill. App. Ct. 2007); *Sherman v. Ryan,* 911 N.E.2d 378, 395-97 (Ill. App. Ct. 2009) (allegations did not overcome business judgment rule); *Mendelovitz v. Comdisco, Inc.,* No. 93 C 937, 1993 WL 367091 at *2 (N.D. Ill. Sept. 16, 1993) (dismissing complaint); *Spillyards v. Abboud,* 662 N.E.2d 1358, 1370-71 (Ill. App. Ct. 1996) (affirming dismissal for legal insufficiency where shareholder did not allege conduct to overcome business judgment rule); *Miller v. Thomas,* 656 N.E.2d 89 (Ill. App. Ct. 1995) (same). Moreover, "the business judgment rule is a substantive rule of law that requires of the FDIC both pleading and proof to avoid its reach." *FDIC v. Benson,* 867 F. Supp. 512, 521 (S.D. Tex. 1994) (granting motion to dismiss negligence claims by defendant officers and directors of failed bank based on Texas business judgment rule). Finally, to survive dismissal, the FDIC must allege more than that the Bank failed and Mr. Mahajan caused this failure. *See Wallach v. Billings,* 115

4

N.E. 382 (Ill. 1917) (alleged "general supineness of looseness by management by the directors" does not overcome business judgment rule) (citation omitted)).

Taking into account the business judgment rule and the requirements of *Twombly* and *Iqbal,* the Complaint lacks sufficient facts to state plausible negligence and breach of fiduciary duty claims. The FDIC never alleges a single fact to show that Mr. Mahajan failed to exercise proper judgment in light of facts known to him at the time he took actions with regard to the Loss Loans. At most, the Complaint alleges that Mutual entered into loan transactions that resulted in losses. But Mr. Mahajan is not an insurer or guarantor against loan losses. *First National Bank of Lincolnwood v. Keller,* 318 F. Supp. 339, 347 (N.D. Ill. 1970) (fact that loan defaulted did not make director liable for negligence); *Wallach*, 277 Ill. At 233 (bank directors "are not liable for every loss which happens to occur. Such a rule would make a bank director an insurer, which he is not.").

Here, the FDIC's Complaint fails because it simply does not allege what facts Mr. Mahajan knew when he voted on the Loss Loans. Because "[n]either an awareness of facts nor a conscious disregard of oversight duties can be inferred from a director's service," a complaint alleging a breach of fiduciary duty must specify what a defendant specifically knew or did at the time of the challenged business decision—here, the Loss Loan approvals. *See National Credit Union Administration v. Siravo,* No. 10-CV-1597, slip op. at 4 ("because of the effect of the business judgment rule, the question in assessing the director defendants' liability *vis a vis* the Option ARMs and concentration levels is what the director defendants knew at the time that should have dictated to them that they do something more or different from all that they did do and all that they did review"); *In re ITT Corporation Derivative Lit.,* 653 F. Supp. 2d 453, 464 (S.D.N.Y. 2009). Mr. Mahajan's business judgment regarding the level of risk cannot be

*CHI 61,979,848*

second-guessed, absent allegations that he knew at the time of his decision that the losses would in fact occur and that Mr. Mahajan did not approve the loans in good faith. *See Oakland County Employees' Retirement Sys. v. Massaro,* 736 F.Supp.2d 1181, 1187 (N.D. Ill. 2010) (allegations of breach of fiduciary duty did not comply with Rule 8 because no facts indicated officers knew that accounting was improper).

Significantly, Mr. Mahajan's business decisions cannot be judged based on hindsight. *Starrels v. First National Bank,* 870 F.2d 1168, 1171 (7th Cir. 1989) (complaint did not survive business judgment rule because the "allegations merely show[ed] with hindsight that these loans were a mistake"); *FDIC v. Stahl,* 854 F. Supp. 1565, 1568-69 (S.D. Fla. 1994) (board decisions must be assessed at the time of the decision and not in "hindsight"); *HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC,* 517 F.3d 454, 457-58 (7th Cir. 2008) (valuation firm was not grossly negligent by failing to predict extent of market downfall). Courts have repeatedly failed to hold directors and officers liable for decisions that may be regrettable in hindsight following a financial crisis. *McRoberts v. Spaulding,* 32 F.2d 315, 316-17 (S.D. Ia. 1929) (in "retrospection it is easy to criticize the actions of officers" of failed bank in the Depression, but such defendant could not be held liable for not anticipating what everyone else failed to anticipate). Similarly, Mr. Mahajan here cannot be liable for not anticipating the full extent and depth of the greatest economic crisis since the Great Depression, one which the FDIC itself has conceded was not anticipated.

With respect to the breach of fiduciary duty claim alleging corporate waste, the business judgment rule bars this claim as well. If adequate consideration is received by the corporation and "if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude *ex post* that the

transaction was unreasonably risky." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000). Moreover, "the size and structure of executive compensation are inherently matters of judgment." *Oakland County,* 736 F.Supp.2d at 1188. The FDIC has not sufficiently plead that Mr. Mahajan did not act with a good faith judgment in approving the corporate expenditures at issue in the Complaint.

> **B.** **The FDIC's Assertions do not Support any Inference of Negligence, Gross Negligence or Breach of Fiduciary Duty.**

The FDIC alleges generally that Mr. Mahajan was negligent, grossly negligent and breached his duty by 1) approving the Loss Loans; 2) failing to properly supervise the Bank's lending operations, and 3) failing to heed alleged warnings from regulators. Under Illinois law, gross negligence is "'very great negligence…[b]ut it is something less than…willful, wanton and reckless conduct.'" *FDIC v. Gravee*, 966 F. Supp. 622, 636 (N.D. Ill. 1997) (citation omitted). And Mr. Mahajan, as a director, cannot be liable for slight negligence or errors in judgment. *Murphy v. Cando*, 1931 WL 3142 (Ill. App. Ct. 1931) .

The FDIC's insufficient allegations fail to support a plausible inference that Mr. Mahajan's conduct amounted to negligence or gross or "very great negligence," and thus fail to pass muster under *Twombly*. Moreover, the Complaint does not allege each Defendant's role regarding the Loan Losses, other than identifying which loans they "voted" for (Compl., ¶ 57), and does not identify what role Mr. Mahajan's actions played in the Bank's purported losses. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (recognizing that plaintiff "often uses this vague phrasing, which does not adequately connect specific defendants to illegal acts").

### 1. The Complaint Lacks Sufficient Allegations that Mr. Mahajan Knew During the Approval Process the Loss Loans Would Fail.

Notably, the Complaint is remarkable for what is absent from the FDIC's allegations. The FDIC fails to identify which issues allegedly existed for any specific loan at the time of origination. The result is a Complaint replete with meaningless boilerplate language that neither gives Mr. Mahajan fair notice of the claims against him nor supports a plausible inference that he was negligent, grossly negligent, or breached his fiduciary duty in approving these loans.

### a. The FDIC's conclusory allegations that Mutual's lending policies were insufficient do not support its claims

The FDIC makes the conclusory allegation that Mr. Mahajan "routinely ignored the Bank's loan policy requirements and did not enforce loan policy provisions." (Compl., ¶ 37.) But the general allegations regarding loan concentrations with a small number of borrowers (*id.*, ¶ 30), growth in general (*id.*, ¶¶ 28-29) or that Mutual failed to hire necessary staff (*id.*, ¶ 31) are absent any allegations that such lending practices violated any banking regulation and are not linked to any specific losses in any way. Indeed, the FDIC concedes that Mutual had extensive lending policies (*id.*, ¶ 35) and does not allege that those policies were deficient or criticized by the regulators.

The FDIC nonetheless make the conclusory allegation that Mutual had "improvident lending practices," supposedly supported by the alleged absence of reports or the timing of receipt of documents. (*id.*, ¶ 32) But nowhere does the FDIC allege when the documents were purportedly missing. The FDIC took over the Bank and its records in July 2009 and there are no allegations that the records were missing at the time Mr. Mahajan made his decisions, voted on the subject loans, or that Mr. Mahajan knew or should have known about any alleged document

CHI 61,979,848

issues.[2]   Nor does the timing of the receipt of appraisals or the nature of retention of the appraisers indicate any deficiency in the appraisals themselves or suggest that the appraised values did not support the loans at the time they were made.  Although the FDIC alleges that "the Bank's ability to calculate accurate Loss Loan reserves was called into question as early as 2005" (*id.*, ¶ 33), nowhere does the FDIC allege that any Loss Loan reserve was deficient; nor does the FDIC ever identify any loan that was under-reserved at any point in time.

Further, many of the allegations also are general boilerplate allegations.  For several loans, the FDIC repeats the conclusory allegation that the loan was made "after the commercial real estate market began its decline and collateral values had plummeted" (*id.*, ¶¶ 63(e), 67(h), 71(e), 75(e)), but does not allege any facts indicating Mr. Mahajan was aware at the time of the market in general or the impact of such alleged market conditions on the collateral value of the specific properties at issue.  The Loss Loan allegations do not contain any facts indicating that any appraisal did not support the loans or that any loan-to-value amounts were improper.  Nor are there any allegations as to when a loan defaulted, which is relevant to assess whether Mr. Mahajan even had any opportunity to pursue guarantors for possible recovery before the Bank was taken over.

The FDIC alleges that for several loans, Mutual's loan was used to refinance existing loans.  But refinancing is a common business practice and a useful financing tool for real estate owners, and the Complaint contains no facts indicating that at the time of refinancing, the collateral supporting the Mutual loan was deficient.  The FDIC also ignores basic tenets of real estate lending by alleging, for example, that the R&B Grantline loan was somehow improper because it was secured by raw land that was intended to be developed.  (*Id.*, ¶ 97.) There is

---

[2] Nor is there an allegation that Mr. Mahajan was responsible for maintaining any of the unidentified missing records.

*CHI 61,979,848*

nothing inherently imprudent about making loans secured by raw land; all real estate at one point consisted of raw land before development.

In addition, the allegations that loans were disbursed before formal approval or were approved in violation of alleged lending policies also do not establish any negligence or breach of fiduciary duty. A "violation of a bank's internal rules and regulations with regard to lending procedure does not, without more, make a director and officer liable for the default of such loans. The common law imposes liability only for lack of diligence or negligence in the conduct of his official duties; it does not make him an insurer of the success of all ventures merely because corporate procedures are ignored." *First National Bank of Lincolnwood v. Keller,* 318 F. Supp. 339, 347-48 (N.D. Ill. 1970). With respect to the timing of the loan approvals and disbursements, the FDIC alleges no facts indicating that any disbursements before approval proximately resulted in any loss. The fact and timing of initial disbursement, particularly if the loan was later properly approved, does not in and of itself cause a loss to the Bank or result in default of a loan.

> b.      *FDIC guidelines support Mutual's lending practices*

The FDIC's Complaint ignores that its own guidelines make clear that directors and officers may consider many different factors in determining whether to approve a loan, including the income from the underlying property, the value of the property, any secondary sources of repayment, additional collateral, and the capacity of the borrower. 12 C.F.R. Part 365, App. A. Thus, the allegation that a guarantor's financial condition had declined is insufficient to establish that the loan approval process was so deficient or improper to support the FDIC's claims. Indeed, the collateral value of the property alone, the anticipated income from the property, or the borrower's capacity were appropriate factors to consider. The Guidelines for Real Estate

Lending identify a number of factors for underwriting consideration, and the "capacity of the borrower, *or income from the underlying property,* to adequately service the debt" is only one "relevant credit factor." *Id.*; *see Lavery v. Kearns,* 792 F. Supp. 847, 866 (D. Me. 1992) ("It was not unusual banking practice to make commercial loans for real estate development to developers who did not have strong cash positions…The Bank had appraisals of [the] properties done and relied on those as an indication of whether to make the loans, because repayment was expected to come from the developed property."). In the absence of allegations that all of the different underwriting factors were absent or deficient as to each loan <u>and</u> that Mr. Mahajan knew of those circumstances, the FDIC cannot state a plausible claim against him based on the loan approval decisions.

Nor are there any allegations that Mr. Mahajan was aware of any allegedly deficient appraisals supporting the collateral values of properties securing the real estate loans. FDIC regulations set forth specific standards for real estate appraisals (12 C.F.R. Part 323), but nowhere does the FDIC identify any alleged violation of those regulations or allege that Mr. Mahajan knew of any alleged appraisal deficiency at the time of the loan decisions.

c.    <em>Use of interest reserves does not support the FDIC's claims</em>

The FDIC's allegations about Mutual's use of interest reserves also fail to establish a claim for liability. The regulators knew about the Bank's use of interest reserves, which was entirely appropriate and does not establish very great negligence or negligence. Interest reserves are a portion of the loan funds designated "to be used to pay interest that will accrue on that loan." *Barber v. First Midwest Bank,* 355 B.R. 103, 108 (Bankr. C.D. Ill. 2006). Such interest reserves are "a common commercial practice for lending institutions financing construction projects." *Id.* In a "typical real estate construction loan a lender recognizes that the borrower

11

does not have the funds to pay interest on the loan during construction and expects the interest to be repaid from the proceeds of a permanent mortgage loan obtained after construction is complete or from revenues generated by the sale or operation of the project after completion of construction." *Id.* at 109 (citations omitted). The FDIC itself has acknowledged that interest reserves are appropriate and "provide the funds to service the debt until the property is developed, and cash flow is generated from the sale or lease of the developed property." *FDIC: Supervisory Insights: "A Primer on the Use of Interest Reserves"* (May 2008). Accordingly, the mere use of interest reserves as a component of Mutual's construction loans did not violate any standard of care and the FDIC does not allege that the use of interest reserves when the loan decisions were made was knowingly improper.

At the end of the day, the Complaint contains no allegations leading to a reasonable inference that Mr. Mahajan did not believe (or was grossly negligent in believing) that the Bank had sufficient controls in its underwriting and loan monitoring function to properly manage risk in its loan portfolio. Indeed, if such a statement were not true, no one would know better than the regulators who repeatedly examined the Bank and concluded from 2004 to 2007 that the Bank was sufficiently well managed to require no further action.

Similar complaints founded upon negligence standards have been held deficient under *Twombly.* In *Belmont Holdings Corp. v. SunTrust Banks, Inc.,* No. 09-CV-1185, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) , the court dismissed a complaint that alleged officers and directors failed to provide for adequate loan loss reserves where the reserves were significantly increased after the housing market collapsed. The court rejected such hindsight pleading: "[o]rdinarily, however, 'corporate officials need not be clairvoyant…'" and "[i]n the case of loan losses, '[t]hat defendants later decided to revise the amount of loan loss reserves that

[they] deemed adequate provides absolutely no reasonable basis for concluding that defendants did not think reserves were adequate at the time…"; *id.* at *7 ("Plaintiff offers, at most, conclusory assertions, including that SunTrust's ALLL and loan loss provision were understated, as evidenced by the fact that SunTrust subsequently raised these figures after the economic downturn…The Court concludes that Plaintiff's Complaint fails to provide minimal factual content, required by *Twombly,* to permit the court to draw a reasonable inference" that defendants are liable).

The Complaint here improperly relies upon hindsight and the subsequent economic collapse and contains no facts indicating that Mr. Mahajan knew at the time decisions were made that any specific loan was unsafe or unsound. The FDIC has never identified any specific loan that it claims was under-reserved at any time by any specific amount. Subsequent accounting decisions to write down loans based on estimates and then-existing circumstances do not establish that the original loan decision was grossly negligent or breached a fiduciary duty. In other words, a subsequent write-down or loss does not sufficiently allege loss causation as a result of the original lending decision.

### 2. The Complaint Lacks Facts Supporting an Oversight Failure Claim.

The separate counts alleging an "oversight" failure are simply another allegation of negligence. Because directors necessarily delegate and entrust officers and employees to manage a corporation's business, directors are not personally liable for such employees' torts or mismanagement unless the directors know about such misconduct. *Zahl v. Krupa,* 927 N.E.2d 262, 288-89 (Ill. App. Ct. 2010) (directors were not liable for negligent supervision of officer where there were no facts indicating directors knew about officer's misconduct); *Lowell Hoit & Co. v. Detig,* 50 N.E.2d 602, 603-04 (Ill. App. Ct. 1943) (director was not liable for conduct of

13

officer where no corporate record reflected that director was aware of transaction). A claim for oversight failure must allege facts indicating that the director knew about the alleged transactions or misconduct and directors cannot be second-guessed based upon hindsight. *Zahl,* 927 N.E.2d at 289 ("It is in retrospection alone that [the officer] appears unworthy of the great trust [the director] defendants placed in him.").

In short, even if the Complaint were properly to allege misconduct by Mutual's officers—which it does not—in order to assert a claim for failure to supervise, the Complaint must set forth facts indicating that Mr. Mahajan knew about such alleged misconduct at the time. But it does not. Rather, the FDIC fails to allege, for example, that he knew about disbursements on specific loans, (Compl., ¶ 67(e)) or knew that a borrower was incarcerated (*id.,* ¶ 79(b)). These allegations, while intriguing, do not satisfy the federal pleading requirements.

### 3. The Complaint Lacks Facts Indicating that Mr. Mahajan Ignored Regulatory Directives or Warnings.

Mr. Mahajan joins in the Outside Directors' (Steven Lakner, Ronald Tucek, Patrick McCarthy and Paul Pappageorge) Memorandum in Support of their Motion to Dismiss for the argument that the FDIC fails to properly allege facts indicating that Mr. Mahajan ignored regulatory directives or warnings before the Loss Loans were approved and, thus was negligent, grossly negligent and breached his fiduciary duty.

### C. The Allegations Do Not Support an Inference that Mr. Mahajan Proximately Caused the Alleged Loan Losses.

The Complaint is also deficient because it fails adequately to allege that Mr. Mahajan's conduct proximately caused any loss, a required element of any negligence, gross negligence or breach of fiduciary duty claim. *Wallach,* 115 N.E. 382 (Ill. 1917) (bank director is liable only if failure to act proximately caused the loss). To demonstrate proximate cause, a plaintiff must

establish "what was apparent to the defendant at the time," rather than "what may appear through the exercise of hindsight." *Zahl v. Krupa,* 927 N.E.2d at 1023 (citation omitted). As set forth above, the Complaint fails to allege sufficient facts that Mr. Mahajan knew at the time of the lending decisions that his decisions would in fact result in losses to the Bank. Nor does the Complaint explain how the specific facts known to Mr. Mahajan proximately resulted in losses.

**D.** **Mr. Mahajan Is Entitled to the Protection of the Illinois Banking Act.**

Under the Illinois Banking Act, Mr. Mahajan was entitled to rely upon "advice, information, opinions, reports or statements, including financial statements and financial data, prepared or presented by (1) one or more officers or employees of the bank whom the directors believes to be reliable and competent in the matter presented." 205 ILCS § 5/16. None of the FDIC's allegations provides any basis for concluding that Mr. Mahajan was wrong to rely upon the loan write-ups recommending the loans, or that he was grossly negligent in doing so. There are no allegations that Mr. Mahajan knew or was very greatly negligent in not knowing that the information in the loan write-ups was purportedly incorrect or somehow deficient. To the contrary, the FDIC's allegations make clear that the criticisms are based upon facts not discovered until after the loan was made, when market conditions had greatly changed. (Similarly, there are no allegations that the Officer Defendants knew that any loan was unsound in any way at the time it was made or were grossly negligent in approving them.) *See FDIC v. Castetter,* 184 F.3d 1040, 1044-45 (9th Cir. 1999).

**E.** **The Gross Negligence Claims Fail as a Matter Of Law and are Insufficiently Plead Under FIRREA**

"Illinois law does not recognize gross negligence as a separate cause of action." *ExxonMobil Oil Corp. v. AMEX Constr. Co.*, 70 F. Supp. 2d 942, 974 n.9 (N.D. Ill. 2010). That

said, gross negligence is cognizable under FIRREA (Financial Institutions Reform, Recovery and Enforcement Act), however, gross negligence has been interpreted by Illinois courts as constituting "recklessness." *RTC v. Franz*, 909 F. Supp. 1128, 1139 (N.D. Ill. 1995). Mr. Mahajan joins in the Veluchamy Defendants' Memorandum in Support of their Motion to Dismiss for their argument that the FDIC fails to properly allege facts that Mr. Mahajan was grossly negligent.

## II. THE FDIC FAILS TO SUFFICIENTLY ALLEGE FACTS THAT MR. MAHAJAN VIOLATED HIS DUTY OF LOYALTY BY APPROVING DIVIDEND PAYMENTS.

Mr. Mahajan joins in the Veluchamy Defendants' Memorandum in Support of their Motion to Dismiss for their argument that the FDIC fails to properly allege facts that Mr. Mahajan unlawfully approved dividend payments and thus violated his duty of loyalty.

## III. THE FDIC FAILS TO ALLEGE SUFFICIENT FACTS THAT MR. MAHAJAN PERMITTED WASTING OF CORPORATE ASSETS

### A. Count VI Is Legally Insufficient as the FDIC Fails to Plead that Any Fiduciary Duty Was Breached

The FDIC further alleges that Mr. Mahajan breached his fiduciary duty "by allowing and approving the wasteful use of Mutual Bank funds." (Compl., ¶ 170.) For an expenditure to be considered a "waste," it must be "an exchange that is so one-sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *See Oakland County*, 736 F. Supp. 2d at 1187-88 (*quoting In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006)).

In the Complaint, however, the FDIC offers nothing more than mere conclusions that the expenditures approved by Mr. Mahajan were wasteful. The FDIC fails to allege sufficient facts that could establish that the Bank did not receive adequate consideration or did not benefit from

16

the expenditures referenced. The Complaint also fails to allege the specific action taken by Mr. Mahajan—or any other Director Defendant—that caused injury to the Bank or each Defendant's role in allegedly permitting the corporate waste to occur. Rather, the FDIC blithely alleges that Mr. Mahajan breached his duty by "approving" or "allowing" certain expenditures (Compl., ¶¶ 110-113). Such conclusory allegations are insufficient to withstand dismissal. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (recognizing that plaintiff "often uses this vague phrasing, which does not adequately connect specific defendants to illegal acts").

"A plaintiff attacking a corporate payment has the heavy burden of demonstrating that no reasonable businessman could find that adequate consideration had been supplied for the payment." *Cohen v. Ayers*, 596 F.2d 733, 739 (7th Cir. 1979). The FDIC specifically references four instances of what it describes as "wasteful use of Mutual Bank funds" that it claims constitute a breach of Mr. Mahajan's fiduciary duty: (1) compensation paid to Mr. Mahajan that he allegedly put toward his wife's legal fees; (2) payment for a Board of Directors meeting in Monte Carlo; (3) payment to sponsor a "Mutual Bank function" that included Arun Veluchamy's wedding; and (4) payments to contractors for renovations to the Bank's offices. (Compl., ¶¶ 109-113, 170.) The FDIC does not plead any facts, however, that support its claim that the expenditures constitute corporate waste.

Though the FDIC alleges that Bank funds were used for each of these expenditures, the FDIC does not allege facts to show (1) that these expenditures did not result in adequate consideration for the Bank and therefore constitute corporate waste; (2) that Mr. Mahajan did not act in good faith; or (3) that Mr. Mahajan placed his own personal interests ahead of the Bank when authorizing these expenditures, and thereby violated his duty of loyalty. *Cohen*, 596 F.2d at 739-40. In the absence of such factual allegations to support its conclusions that Mr. Mahajan

17

committed waste and breached his duties, Count VI must be dismissed. *See Iqbal*, 129 S.Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

     **1.**     ***The FDIC Has Not Pled Facts Alleging a Violation of the Duty of Care***

As a threshold matter, the FDIC erroneously attempts to hold Mr. Mahajan to a higher standard of care than exists under Illinois law. Illinois law imposes on officers and directors a duty of "ordinary care" and prudence in the administration of the affairs of a bank. *FDIC v. Bierman*, 2 F.3d 1424, 1432 (7th Cir. 1991). But the FDIC improperly alleges that Mr. Mahajan owed a "duty to exercise *the utmost* care, skill and diligence." (Compl., ¶ 168.) Furthermore, the FDIC fails to plead sufficient facts to support any claim that Mr. Mahajan violated even that heightened standard of care.

The FDIC does not allege any action or inaction by Mr. Mahajan that would indicate a plausible violation of his duty of care. The FDIC does not allege, for example, that Mr. Mahajan failed to become sufficiently informed about the expenditures, or was hasty in his decision-making process, or that these allegedly "wasteful" expenditures resulted because he was asleep at the switch. Instead, the FDIC points simply to the expenditures themselves, declares them "wasteful," and then characterizes them as damages suffered by the Bank based on this conclusory declaration.

Nor does the FDIC allege sufficient facts to demonstrate that these expenditures did not have any legitimate business purpose or that the Bank did not receive adequate consideration—a necessary element of a waste claim. *See Oakland County,* 736 F. Supp. 2d at 1187-88 (*quoting In re Walt Disney,* 906 A.2d at 74) (plaintiff must meet the "onerous" burden of proving that "no business person of ordinary, sound judgment could conclude that the corporation has received

adequate consideration"); *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (holding that a corporate waste claim must fail if "there is any substantial consideration received by the corporation"). Further, the FDIC tersely describes these expenditures as "personal expenses" (Compl., ¶ 109), though does not provide sufficient "further factual enhancement" to clarify this "label[] and conclusion[]." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, the FDIC leaves open the possibility that such expenditures, while possibly indirectly benefiting some directors personally, had a legitimate business purpose and in fact benefitted the Bank.

Though the FDIC makes a blanket statement that there was no legitimate business purpose for holding a Board of Directors meeting in Monte Carlo (Compl., ¶¶ 113, 170), the FDIC does not allege that the Bank did not reap any benefit from the meeting being held in this location or that the Bank did not receive adequate consideration for this expenditure. Simply alleging that no legitimate business purpose existed is the type of conclusory allegation that does not meet the factual pleading requirements of Rule 8. *See Iqbal*, 129 S.Ct. at 1949 (requiring factual assertions rather than mere conclusory statements).

With respect to the Bank's payment for Arun Veluchamy's wedding, the FDIC's corporate waste allegation is contradicted by the same document it relies upon in its Complaint. The FDIC quotes from the June 18, 2008 Board of Director meeting minutes wherein the Director Defendants approved the payment. (Compl., ¶ 110.) What the FDIC conveniently ignores, however, is the preceding sentence in the minutes which states that the Bank was cancelling its 2008 Diwali celebration due to the July 12, 2008 function, (see Exhibit A attached

hereto)[3], which served as the Bank's annual client development function in lieu of the Diwali event.[4]   Again, the FDIC fails to allege sufficient facts that the Bank did not receive fair consideration for the client function expenditure.  *Cohen*, 596 F.2d at 739 ("corporate payments are not a waste or gift of assets as long as fair consideration is returned to the corporation").

The FDIC further relies upon the compensation paid to Mr. Mahajan and allegedly used to pay for his wife's legal expenses as support for its corporate waste claim, yet the FDIC concedes that these were "advances" on his salary or "bonuses." (Compl., ¶ 111.)  It is of no matter how Mr. Mahajan chose to spend his salary or bonuses.  That Mr. Mahajan allegedly applied his compensation toward payment of his wife's legal fees is not a basis for a claim of waste, unless the FDIC alleges the compensation action was unconscionable, which it does not do.  *See e.g. Brehm,* 746 A.2d at 263 (allegations of excessive compensation "are confined to unconscionable cases where directors irrationally squander or give away corporate assets.").

Lastly, the FDIC alleges that Mr. Mahajan further wasted the Bank's assets by approving payments for renovations to the Bank's offices which exceeded the value of the renovations by $250,000.  (Compl., ¶¶ 112, 170.)  But the FDIC provides no facts supporting its allegation, such as what the FDIC believes the value of the renovations should have been, how that value was determined, or whether there were extraneous factors that caused the projects to exceed the purported value.   And the Complaint is completely devoid of any allegations that the Bank received no consideration for this expenditure.   The FDIC's sensational-sounding Complaint

---

[3] This Court can consider the meeting minutes as part of this motion to dismiss because the documents are referred to and quoted from in the FDIC's complaint and central to the FDIC's allegations.  *Venture Assocs. Corp v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (collecting cases).

[4] Further, the Board minutes reflect that two representatives from the FDIC were present at the meeting. (Exh. A.)

lacks in substance and its allegations are insufficient to support its claim that Mr. Mahajan somehow breached his duty of care in approving these renovation expenditures.

Because the Complaint fails to provide specific context as to whether there was any consideration received by the Bank as a result of the referenced expenditures, why such decisions could not be attributed any rational business purpose, or that Mr. Mahajan was less than careful when he participated in approving the expenditures at issue, the FDIC fails to sufficiently allege waste. *See e.g.*, *Sherman v. Ryan,* 911 N.E.2d 378, 398-399 (Ill. App. Ct. 1st Dist. 2009) (holding that allegations questioning compensation, incentives and paying legal fees for directors was insufficient in the absence of allegations that the corporation received no consideration for such payments); *see also In re 3ComCorp.,* No. C.A. 16721, 1999 WL 1009210, at *4 (Del. Ch. Oct. 25, 1999) (stating that a waste claim will arise only when "the company literally...[received] nothing for what it gave.")

As such, the FDIC's corporate waste argument is insufficient to support its claim of breach of the duty of care. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556) (Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Accordingly, the FDIC's breach of fiduciary duty claim fails.

## 2. *The FDIC Fails to Plead Any Breach of the Duty of Loyalty*

The Complaint further alleges that the expenditures, which the FDIC—employing 20/20 hindsight—deems "wasteful," violated Mr. Mahajan's duty of loyalty. (Compl., ¶ 169.) Yet even uneconomical or unwise expenditures do not implicate the director's duty of loyalty which focuses specifically on whether a director placed his or her interests above that of the company. Directors or officers owe a "fiduciary duty of loyalty to their corporate employer not to actively

exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed." *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F.Supp. 2d 398, 415 n.14 (N.D. Ill. 2001); *see also Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993). The FDIC, however, does not allege any facts that would demonstrate that Mr. Mahajan personally benefited from any of the supposedly wasteful expenditures to the detriment of the Bank. Additionally, the FDIC also does not allege that Mr. Mahajan's authorization of these expenses hindered the operations of the Bank.

Moreover, even assuming, *arguendo*, that the expenditures referenced by the FDIC were "wasteful," which is the basis of the FDIC's claim, waste in and of itself does not implicate the duty of loyalty. "Courts applying Illinois law have construed the duty of loyalty to prohibit officers or employees from improperly competing with their employer, soliciting the employer's customers, enticing co-workers away from the employer, diverting business opportunities, engaging in self-dealing and/or otherwise misappropriating the employer's property or funds." *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F.Supp.2d 827, 831-832 (N.D.Ill. 2006) (collecting cases). Here, the FDIC levels no allegations to support any such claims of self-dealing or usurping of corporate opportunities. Instead, the FDIC simply lobs more conclusory allegations that the expenditures at issue were "wasteful" and, thus, has not sufficiently alleged any specific failure of the duty of loyalty on Mr. Mahajan's part. For this pleading deficiency, the FDIC's breach of fiduciary duty claim must be dismissed.

### 3. *The FDIC Has Failed To Sufficiently Allege Proximate Cause*

"It is well-settled that a director will not be liable for losses to the corporation absent a showing that his act or omission proximately caused the subsequent losses." *Bierman*, 2 F.3d at 1434. "Proximate cause is 'that cause which, in natural and continuous sequence, unbroken by

any efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" *Id.* Yet again, the FDIC simply makes the conclusory allegation that Mr. Mahajan's breach proximately caused the Bank's losses. (Compl., ¶ 171.) It pleads no facts to support the causation element. Further, the FDIC ignores that the losses may have resulted from other "intervening causes" such as the unprecedented recession that began in late 2007. Because the FDIC has not sufficiently plead facts to satisfy the proximate cause prong of its breach of fiduciary duty claim, Count VI is properly dismissed.

## IV.    THE FIDUCIARY DUTY CLAIMS ARE DUPLICATIVE.

The FDIC's "negligence claim [is] nothing more than a reiteration of the fiduciary duty claim with a negligence label attached to it." *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2006). Mr. Mahajan is alleged to have breached his fiduciary duty (*i.e.* to have acted negligently) and the conduct at issue is the same in both counts, and are thus duplicative. *See FDIC ex rel. Wheatland Bank v. Spangler,* No. 10-CV-4288, 2011 WL 6754022, at *11 (N.D. Ill. Dec. 22, 2011); *Neade v. Portes,* 739 N.E.2d 496, 500-02 (Ill. 2000); *Hoagland v. Sandberg, Phoenix & Von Gontard, P.C.,* 385 F.3d 737, 744 (7th Cir. 2004); *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.,* No. 04 C 2926, 2004 WL 2359233, at *1 (N.D. Ill. Oct. 19, 2004); *see FDIC v. Saphir,* No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011) (dismissing duplicative negligence claims). Accordingly, the breach of fiduciary duty claims should be dismissed.

## CONCLUSION

For the foregoing reasons and Mr. Mahajan respectfully requests that the Court dismiss the FDIC's claims against him with prejudice.

*CHI 61,979,848*

Dated: January 18, 2012

Respectfully submitted,

/s/ Steven M. Malina
One of the Attorneys for
Defendant Amrish Mahajan

Steven M. Malina (ARDC # 6196571)
Beth A. Black (ARDC # 6257729)
Shannon T. Murphy (ARDC # 6300397)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
PH: (312) 460-8400
FAX: (312) 460-8435
malinas@gtlaw.com
blackb@gtlaw.com
murphys@gtlaw.com