IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR MUTUAL BANK,<br><br>        Plaintiff,<br><br>vs.<br><br>AMRISH MAHAJAN, ARUN VELUCHAMY, ANU VELUCHAMY, STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY, PAUL PAPPAGEORGE, RICHARD BARTH, THOMAS PACOCHA, JAMES REGAS, REGAS, FREZADOS & DALLAS LLP<br><br>        Defendants. | Case No. 1:11-CV-07590<br><br>JURY DEMANDED |

**JOINT REPLY MEMORANDUM OF LAW BY DEFENDANTS STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY, AND PAUL PAPPAGEORGE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

The contents of the FDIC's Reports of Examination ("ROEs") exemplify why the FDIC's pleadings are deficient. The Complaint is devoid of any factual allegations that would strip the Outside Directors of the protections of the business judgment rule. The FDIC admits that the operative facts are those that existed (and were known by the Outside Directors) "at the time" the loans were approved. But that is not what is pleaded. Rather than identify, with any specificity, the contents of the loan presentations or the basis upon which the Outside Directors made any of the business decisions now under attack, the FDIC merely pleads the undisputed result: defaults. The FDIC infers that because the loans defaulted, they should never have been approved, selectively picking one or two aspects of each loan that the FDIC alleges could have been better. This type of reverse-engineering pleading contradicts the standard for legal liability of outside directors and cannot, as a matter of law, state a claim for relief.

## **ARGUMENT**

I.  **The FDIC Tellingly Ignores Its Own Reports of Examination Issued Prior to the Loan Approvals Identified in the Complaint.**

The actual ROEs issued by the FDIC (which are purported to have put the Outside Directors on notice of regulatory warnings that they failed to heed) are in the record before this Court, but the FDIC tellingly ignores the contents of those ROEs and instead asks this Court to consider cherry-picked quotes in the Complaint, which are taken out of context, and generalized allegations that "warnings" were disregarded. The FDIC avoids the ROEs because what the regulators actually told the Outside Directors from 2004 through 2007 is in stark contrast to what the FDIC now claims, with 20/20 hindsight.

During the time periods relevant to their approval of the so-called "loss loans," the regulators continuously told the Outside Directors that Mutual Bank was "fundamentally sound" and categorized identically to those financial institutions that are:

> stable and are capable of withstanding business fluctuations. These financial institutions are in substantial compliance with laws and regulations. Overall risk management practices are satisfactory relative to the institution's size, complexity, and risk profile. There are no supervisory concerns and, as a result, the supervisory response is informal and limited.[1]

On a motion to dismiss, this Court is not required to blindly accept as true allegations in the Complaint that are directly contrary to the written documents incorporated by reference by the FDIC. The FDIC's argument that the Outside Directors were told that the bank was "poorly run and in need of director remedial efforts" is nowhere to be found within the 2006 and 2007 ROEs.

Despite suing the Outside Directors for their purported "failure to heed regulatory warnings," the FDIC disregards the actual contents of the 2006 and 2007 ROEs in which the

---

[1] *See* FDIC Risk Management Manual of Examination Policies, Section 1.1, Basic Examination Concepts and Guidelines, http://www.fdic.gov/regulatinos/safety/manual.

2

warnings are supposedly located.² This is because a thorough reading of the ROEs confirms that the FDIC did not "warn" the Outside Directors in the manner that the FDIC now pleads in its Complaint. (*See* Doc. No. 68 at Exs. 1 and 2.) If this Court reads the actual contents of the 2006 and 2007 ROEs—and places the FDIC's quotes in context of what was actually being told to the Outside Directors at that time—the Court will see that although those ROEs acknowledged that certain areas of the lending practices of Mutual Bank presented higher risk than others (such as out of state development and Mutual Bank's CRE and ADC loans), overall the regulators praised Mutual Bank, its management team, its responsiveness to regulators, and its loan portfolio. The actual ROEs bear no resemblance to the FDIC's broad sweeping generalizations found throughout its Complaint and memorandum.

Inaccurate allegations that are contradicted by the very documents upon which they are based do not to trump the actual terms of the documents referred to. *See, e.g., Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) ("Where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom."); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454-55 (7th Cir. 1998) (collecting cases) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) (same); *Nishimatsu Contr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975) (same). The fact that it is the defendants, as opposed to the FDIC, who have provided this Court with the actual

---

² The only true acknowledgement by the FDIC of the substantive content of the operative ROEs that were relied upon by the Outside Directors is a footnote, whereby the FDIC basically disclaims any accountability for its own supervisory role in the failing of Mutual Bank, stating that it owed no duties to Mutual Bank or the Outside Directors. (*See* Doc. No. 90 at 16, n.5.)

documents that form the basis for the purported "regulatory warnings" does not alter that conclusion. *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim.") (collecting cases); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court can consider "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

The only place this Court will find the alleged "warnings" that the FDIC emphasizes are in the 2008 ROE and January 30, 2009 Visitation Report—*which were not received by the Outside Directors until AFTER each of the decisions identified in the Complaint had already been made.* The Court should hold the FDIC accountable for its brazen misleading deficiency in pleading. Its claims against the Outside Directors must be dismissed because it has failed to plead a factual basis to support the FDIC's multi-million dollar claims against them.

## II. The FDIC's Refusal to Acknowledge the Differences Between the Outside Directors and Inside Directors Does Not Alter that the Business Judgment Rule and the Illinois Banking Act Require Dismissal of the FDIC's Claims Against the Outside Directors.

The FDIC's opposition memorandum suffers the same defect as its Complaint: it generically lumps together all the "Defendants" without any distinction between the largely varying degrees of knowledge and obligations of the inside directors and officers, compared to the outside directors. Courts have dismissed pleadings on this very ground alone, when the pleadings "do not materially differentiate between interested and disinterested directors." *Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994) (dismissing breach of fiduciary duty and ordinary negligence claims with prejudice where complaint contained no

4

allegations of fraud or self-dealing on the part of the outside directors and did not differentiate between the two categories of directors).

Moreover, because the FDIC's allegations are entirely based upon hindsight, the Complaint fails to identify any factual basis upon which this Court could determine that the decisions made by the Outside Directors, based upon the information made available to them at the time of their decisions, are not afforded the protections of the business judgment rule. The FDIC concedes that its allegations are hindsight, (Doc. No. 90 at 28), and simply asks this Court to allow the hindsight-based pleadings to be resolved at trial. In doing so, the FDIC ignores the pleading requirements that the United States Supreme Court has established. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The FDIC's response—that the Court simply allow hindsight pleading and allow whether the hindsight is accurate to be resolved at trial—is contrary to our legal system.

### A. The FDIC Fails to Account for the Role that the Outside Directors Served and the Information Upon Which They Relied to Make the Business Decisions Being Challenged.

The FDIC concedes, as it must, that a claim for negligence is fact specific and "depends on the circumstances of both the bank and the director." (Doc. No. 90 at 7.) The FDIC's own policies recognize the distinction that outside directors are presumed to know less and have less responsibility for the day-to-day management and operations of the bank.[3] Despite conceding that each director's circumstances must be specifically accounted for, the FDIC does an about-face and faults the Outside Directors for asking this Court to require that the FDIC state claims

---

[3] *See* FDIC "Statement Concerning the Responsibilities of Bank Directors and Officers," http://www.fdic.gov/regulations/laws/rules/5000-3300.html.

for relief that take into account the Outside Directors' role at the bank, and the information upon which they based each of the business decisions now under attack.[4]

The FDIC cannot conflate the knowledge of inside management and inside directors with the Outside Directors. "The directors of a state bank are not liable for losses resulting from or brought about by illegal and improper loans of bank funds" by management or inside directors. *FDIC v. Boone*, 361 F. Supp. 133, 165 (W.D. Okl. 1972) (citing *Briggs v. Spaulding*, 141 U.S. 132 (1891)). The Outside Directors can only, at most, be charged with a plausible claim that their duties were neglected, and "are not liable for errors of judgment, nor are they liable for losses resulting from defalcations or mismanagement by the bank's president upon whom the directors mistakenly relied." *Id.* The decisions made by the Outside Directors were based on loan presentation packages, the contents of which are notably absent from the Complaint. Rather than account for that known fact, the FDIC apparently seeks to impute, for pleading purposes, the collective knowledge of the entirety of bank management, all relevant loan officers and the inside directors to the Outside Directors. The FDIC does this with respect to the factual predicate for all of the claims asserted against the Outside Directors. By asking this Court to require the FDIC to plead its claims, consistent with its own statement of standards governing legal liability, the Outside Directors are not asking for a "pass," as the FDIC suggests. Rather, the Outside Directors are asking this Court only to require the FDIC to plead its claims based upon the facts that were made available to them at the time the decisions were made, as the law requires in order to state a claim upon which relief can be granted.

---

[4] The FDIC's insinuation in its opposition brief that the Outside Directors sat around a conference table to collect fees, (*see Doc.* No. 90 at 17), is incendiary, offensive, and without any foundation. No such allegation is contained in the Complaint, nor could it be, because the FDIC has no factual basis to support such inflammatory remarks, which this Court should strike and not take into consideration.

6

B.  **The Business Judgment Rule Immunizes the Outside Directors From Liability Based Upon the Business Decisions Made, Which Are Presumed to Have Been Made in Good Faith.**

This Court has recently confirmed that the business judgment rule is a presumption that operates as a matter of law to shield the decisions made by directors from liability for honest errors or mistakes of judgment. *FDIC v. Spangler*, Case No. 10-CV-4288, 2011 WL 6754022, at *10-11 (N.D. Ill. Dec. 22, 2011). The presumption can only be overcome if a plaintiff pleads facts capable of rebutting the presumption by stating plausible allegations that a director has acted "fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision." *Ferris Elevator Co., Inc. v. Neffco, Inc.*, 674 N.E.2d 449, 452 (Ill. Ct. App. 1996); *see also FDIC v. Spangler*, 2011 WL 6754022, at *11 (holding FDIC has burden to plead facts capable of rebutting presumption). No such allegations exist in this case. The business judgment rule—just like an affirmative defense based on a statute of frauds that is triggered by the face of the complaint to preclude liability—should therefore be considered by this Court and held to preclude liability on the negligence and fiduciary duty claims.

The rationale and holding of *Stamp v. Touche Ross & Co.* is dispositive in this case, and confirms why the FDIC's allegations against the Outside Directors fall short. Just as in this case, in *Stamp* the Court engaged in a detailed analysis of the nature of the directors' decisions that had come under attack in the pleadings, and determined:

> Nowhere in the complaint does the [FDIC] allege that the [Outside Directors] did not make informed judgments or use due care in arriving at those judgments, facts which are essential for the [FDIC] to recover for negligence. Likewise, there are no allegations that the decisions made involved any fraud, illegality, conflict of interest or bad faith on the part of [the Outside Directors]. Nor does the complaint allege that the [Outside Directors] acted other than in the best interest of the corporation, a fact necessary to recover for breach of fiduciary duty. Instead, [the FDIC's] complaint questions those decisions which the [Outside

7

> Directors] made. This is exactly the type of second-guessing which the business judgment rule was designed to preclude.

*See* 636 N.E.2d 616, 622 (Ill. Ct. App. 1993). A review of the nature of the pleadings that warranted dismissal in *Stamp*, and the FDIC's pleadings in this matter, confirms the applicability of the business judgment rule in this case, which affords the Outside Directors the benefit of the good faith presumption that they are entitled, as a matter of law, to receive.

Recently, the United States District Court for the Northern District of Georgia similarly held that when the pleadings of a complaint establish that the business judgment rule will operate as an affirmative defense and bar a claim as a matter of law, the merits of the affirmative defense can be considered on a motion to dismiss. *FDIC, as receiver of Integrity Bank of Alpharetta, Georgia v. Steven Skow,*, 1:11-CV-0111 (SCJ), (N.D. Ga., Feb. 27, 2012) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)). In the *Integrity Bank* receivership matter, the court held that the FDIC's ordinary negligence and breach of fiduciary duty claims failed as a matter of law under the business judgment rule. (*Id.*)

Contrary to the FDIC's argument here, the Complaint identifies no basis from which this Court can infer that the loans were "imprudent" at the time of approval because the Complaint is silent as to what information was provided to the Outside Directors when their approval was sought. The FDIC looks to the loan default and asks the Court to conclude that the default itself establishes some form of "imprudent" actions. Yet, the Complaint is utterly devoid of facts that would support any such claim. If the basis of the claims is that negligence or a breach of fiduciary duty was committed "at the time of approval," as the FDIC argues, then by necessity the allegations in the Complaint must identify the information relied upon by the Outside Directors, "at the time of approval," and a factual basis to support that such reliance caused them to act fraudulently, illegally, or without becoming sufficiently informed.

Approval of a loan that ultimately goes into default does not constitute *de facto* negligence or a breach of a fiduciary duty. Rather than candidly acknowledge or plead the substance of the relevant ROEs and the loan presentations that were provided the Outside Directors (which are in the FDIC's possession), the FDIC pleads a set of facts that are irrelevant to the decisions made by the Outside Directors at the time. *See, e.g., FDIC v. Castetter*, 184 F.3d 1040, 1045 (9th Cir. 1999) ("ad hominem attacks on the directors' capabilities, their decisions, and their inability to reverse negative earning trends" failed to rebut business judgment rule as a matter of law). Allegations like those in this complaint, challenging board actions, "such as continuing auto lending and management selection, and claims that the board failed to adopt proper policies concerning loans, capital adequacy, collections and internal controls" are "irrelevant" to rebut the applicability of the business judgment rule or to challenge the investigation undertaken by directors, but rather go to the "soundness of the directors' actions based on the information," which cannot form the basis of liability. *Id.* Upon dismissing the irrelevant allegations contained within the FDIC's complaint, the Court will find no factual allegations to support liability on the part of the Outside Directors for the business decisions now under attack. Dismissal of the complaint is therefore warranted.

### C. The FDIC's Example Loss Loan Only Exemplifies the Deficiencies in the Nature of its Pleadings.

In its Memorandum, the FDIC identifies the pleadings relating to one loan as illustrative of its compliance with the pleading requirements, but the example only highlights the FDIC's pleading deficiencies. (Doc. No. 90 at 10-11.) With respect to the Standard Property Development Loan, (Compl. ¶ 89), consistent with all of the loan-based pleadings, the FDIC wholly ignores the contents of the loan presentation that were provided to the Outside Directors. The Complaint identifies no basis upon which the Outside Directors would have known of the

9

alleged inability of the guarantor to pay on his obligations. (*See* Compl. ¶ 89.) The FDIC pleads no basis from which this Court can infer that the Outside Directors had any knowledge of the mechanism by which funds were disbursed, post-closing, or any obligation, as Outside Directors, to supervise the actual disbursement of funds. (*Id.*) The FDIC pleads no basis from which this Court can infer that the Outside Directors had knowledge that funds were in fact received directly by the borrower after closing. (*Id.*) The FDIC pleads no basis upon which this Court can infer that approving a $1.5 million credit increase at a later date, without requiring additional collateral, was negligent or in breach of any fiduciary duties that the Outside Directors owed Mutual Bank. In sum, the FDIC pleads no basis upon which this Court can find, or infer, that the Outside Directors acted fraudulently, illegally, or without becoming sufficiently informed to make a business decision. Nor could it, because the FDIC itself did not even adversely classify this asset in 2007. (*See* Doc. No. 68, Ex. 2.)

As with all the other "loss loans," the FDIC pleads the aftermath—the default—and then works backwards to infer wrongdoing on the part of the Outside Directors and second guess the business decisions that were made (which are presumed to have been made in good faith) based upon how things turned out. There is no dispute as to the outcome of the loans identified in the Complaint: they defaulted when the bottom fell out of the real estate market, real estate and collateral values plummeted, construction halted, and borrowers and guarantors who had significant net worth as a result of real estate holdings and investments experienced an instantaneous cash flow freeze. That series of unfortunate events does not provide a factual predicate for claims of negligence or breach of fiduciary duty against the Outside Directors. And as extensively briefed in the Outside Directors' memorandum of law (Doc. No. 68), neither can the purported regulatory warnings, which were now what the FDIC purports them to have been.

10

## D. The Illinois Banking Act Further Requires Dismissal of the FDIC's Claims.

In discharging their duties, the Outside Directors were statutorily entitled to rely upon "advice, information, opinions, reports or statements" prepared by officers of Mutual Bank and any other consultants as to matters that the directors believed to be "within that person's professional or expert competence." 205 ILCS 5/16(7)(b). The FDIC's only response to this statutory entitlement is to cite to is own unsupported allegations within the Complaint (again, not the operative ROEs) that the Defendants were "repeatedly warned." This argument, again, disregards the fact that the Outside Directors were presented with loan presentations prepared by senior loan officers of Mutual Bank, and that the Outside Directors were statutorily entitled to base their decision upon that information and recommendations.

The FDIC's summary reference to its misleading Complaint allegations, alone, does not suffice to overcome the Outside Directors' statutory entitlement to rely upon the loan presentations and the actual content of the FDIC's 2006 and 2007 ROEs because, for all the reasons set forth in detail above, the ROEs that issued prior to the approval of the loans did not contain the warnings that the FDIC now reads into them. *See, e.g., FDIC v. Castetter*, 184 F.3d 1040, 1045 (9th Cir. 1999) (directors of bank were entitled to rely upon information, opinions, reports, and information provided by bank regulators and accounting firms, and the FDIC's negligence claims failed as a matter of law). The FDIC pleads no basis upon which the Outside Directors' reliance upon the loan presentations and other materials provided to them was unreasonable (indeed, the FDIC largely ignores wholesale the actual contents of those materials). For these reasons, the Illinois Banking Act further insulates the Outside Directors from liability on the FDIC's claims against them.

11

DOCS-#3648521-v1

### III. The Claims Against Director Paul Pappageorge Should be Dismissed.

The most telling example of the deficiency in the FDIC's claims, and the manner upon which it has pleaded its claims, is its continued pursuit of negligence, gross negligence and breach of fiduciary duty claims against Paul Pappageorge to recover $115 million, jointly and severally, along with all other inside and outside directors. Despite the FDIC's concession that Paul Pappageorge was involved in the approval of only two modifications to already existing loans, which resulted in claimed losses of $15 million (Doc. No. 90 at 17), the FDIC fails to acknowledge the impropriety of suing Paul Pappageorge for $115 million. A difference of $100 million is not a nominal sum. The fact that Paul Pappageorge was not serving on the Mutual Bank Board of Directors at the time that the majority of the loans and decisions being challenged in this litigation were made, alone, is enough to require dismissal of the claims against him. *See FDIC, as receiver of Integrity Bank of Alpharetta, Georgia v. Steven Skow,*, 1:11-CV-0111 (SCJ), (N.D. Ga., Feb. 27, 2012) (dismissing all claims against directors based upon acts and approvals made prior to service on the board).

Incredibly, the FDIC argues to this Court that Mr. Pappageorge is "emblematic of the Board's supervisory negligence" and "never read the 2008 Report of Examination" prior to voting to approve loan modifications in May and June of 2008. (*See* Compl. ¶¶ 84, 101.) *Paul Pappageorge did not read the 2008 ROE prior to voting to approve those two respective modifications because the Outside Directors did not receive the 2008 ROE until July 30, 2008.* Rather than respond in candor that Paul Pappageorge did not have access to the 2008 ROE at the time the decisions were made, the FDIC faults Pappageorge for not having read it. Similarly, the FDIC (with no basis in fact) improperly insinuates to this Court that Director Pappageorge did not read the 2006 or 2007 ROEs prior to joining the Board, an allegation notably absent from the

12

Complaint (and also factually untrue). As its sole support for its patently unsupportable claims, the FDIC again only cites to its self-serving and inaccurate portrayals of the contents of the 2006 and 2007 ROEs. (*See* Doc. No. 90 at 18.) Even a brief review of these ROEs will demonstrate that they do not support what the FDIC so strenuously claims they do.

For example, the only quotation identified by the FDIC's in its Opposition Memorandum with respect to Director Pappageorge is a statement in the 2006 ROE that "risk management systems have not kept pace with the record asset growth." (Doc. No. 90 at 18, quoting Compl. ¶¶ 43-44.) However, the noted violations of risk management primarily related to violations of the Bank Secrecy Act ("BSA") and Customer Identification Program ("CIP") (which are not relevant to the allegations in the Complaint). (Doc. No. 68 at Ex. 1 at 1-3.) More importantly, by May 2006 Mutual Bank had made significant progress in responding to the regulators' recommendations, a full-time BSA officer had been hired and trained, and the FDIC had commented that Mutual Bank senior management exhibited strong commitment to maintain a high level of compliance going forward. (*Id.*) Mutual Bank's president himself confirmed that corrective action had been taken to address the violations and that the new BSA officer had implemented procedures to safeguard against future reoccurrences. (*Id.*) The 2007 ROE similarly gave generally good remarks in assessing the responsiveness of the management of Mutual Bank in taking corrective action on all violations noted in 2006 and noted that the executive management of Mutual Bank had implemented all prior recommendations of the regulators. (*See* Doc. No. 68 at Ex. 2 at 2.)

The blatant discrepancies between the FDIC's allegations based on vague "regulatory warnings," and the actual content of the ROEs that the regulators were providing the Outside Directors at the time that the decisions were being made, are very troubling to the Outside

13

Directors. Rather than respond candidly or fairly in opposing the Outside Directors' motion to dismiss, the FDIC instead has chosen to castigate the Outside Directors for their request that this Court require the FDIC's pleadings to state a plausible and viable cause of action against them, as Outside Directors, based on the information and materials that the FDIC well knows was provided to them. The FDIC's continued pursuit of its claims against Director Pappageorge only highlights the reasons why all of its claims against the Outside Directors are fundamentally flawed, and should be dismissed by this Court pursuant to the business judgment rule.

## CONCLUSION

For all the foregoing reasons, the Outside Directors respectfully request that the Court dismiss the claims asserted against them by the FDIC.

DATED: March 13, 2012

Respectfully submitted,

**DEFENDANTS STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY and PAUL PAPPAGEORGE**

By: /s/ Michael S. Loeffler
Michael S. Loeffler (# 6190607)
Todd Hunter Thomas (#6183584)
Loeffler Thomas P.C.
500 Skokie Blvd., Suite 260
Northbrook, IL 60062
847.498.8400

Susan E. Barnes (#138903)
Kim M. Ruckdaschel-Haley (#221831)
Kirstin D. Kanski (#0346676)
LINDQUIST & VENNUM, PLLP
4200 IDS Center
80 South 8th Street
Minneapolis, MN 55402