IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Mutual Bank, | )<br>)<br>)<br>) |
| Plaintiff, | ) 11 C 7590 |
| v. | )<br>) Judge Virginia M. Kendall |
| AMRISH MAHAJAN, ARUN VELUCHAMY, ANU VELUCHAMY, STEVEN LAKNER, RONALD TUCEK, PATRICK MCCARTHY, PAUL PAPPAGEORGE, RICHARD BARTH, THOMAS PACOCHA, JAMES REGAS, and REGAS FREZADOS & DALLAS LLP, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Federal Deposit Insurance Corporation(the "FDIC") as receiver for Mutual Bank (the "Bank") sued the Defendants for gross negligence under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), together with various state law claims including negligence, breach of fiduciary duty, and the wasting of corporate assets. The claims arise from the Bank's loss of $115 million and subsequent business failure allegedly as a result of risky construction and commercial real estate loans and the improper expenditure of corporate assets for personal use by the Defendants. Defendants have asserted numerous affirmative defenses, including the defenses of failure to mitigate, comparative fault, superseding/intervening cause, lack of proximate cause, and waiver and estoppel. FDIC moves to strike these affirmative

defenses[1] and to strike Defendants' reservation of rights to assert additional defenses. For the reasons stated herein, FDIC's motion is granted.

## BACKGROUND[2]

Starting in 2005, the Illinois Department of Financial and Professional Regulations (the "IDFPR") began conducting examinations of the investment practices of the Bank and delivering written reports about the results of those examinations and recommended changes to the board of directors of the Bank. Starting in 2006, the FDIC also began examining the Bank and delivering written reports of its findings. After several years of examinations and the delivery of increasingly dire reports and recommendations from both the IDFPR and the FDIC about the Bank's risk management practices, its record asset growth in the high-risk commercial real estate loans for hotels, gas stations, and convenience stores, and its lack of increase in staffing to keep pace the size of the loan portfolio, the IDFPR closed the Bank on July 31, 2009 and appointed FDIC as receiver. As receiver, FDIC succeeded to all rights, titles, power and privileges of the Bank. *See* 12 U.S.C. §§ 1821(d)(2)(A)(i). As receiver, the FDIC is charged with collecting monies owed to the institution and distributing the funds to the Bank's creditors. *See* 12 U.S.C. §1821(d)(2)(B)(ii); 1821(d)(11). FDIC is also authorized by statute to pursue claims against directors and officers of the Bank for alleged breaches of the applicable standard of care. *See* 12 U.S.C. § 1821(k).

On October 25, 2011, the FDIC initiated this suit against Defendants, each of whom was a director, officer, board member, and/or attorney for the Bank. The Defendants filed motions to

---

[1] FDIC has also reserved the right to move to strike the affirmative defense of a statute of limitations following discovery on the issue.

[2] **The facts pleaded in the FDIC's Amended Complaint are set forth in detail in this Court's Memorandum Opinion and Order dated July 26, 2012 (Docket No.118).**

dismiss that this Court granted in part and denied in part by opinion dated July 26, 2012. Defendants' answers to the Amended Complaint include nine separate affirmative defenses. FDIC has moved to strike six of them, three of which have been pleaded by all Defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f) the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case and "remove unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991); *Bank of America N.A., v. Shelbourn Dev. Group, Inc.*, 732 F. Supp. 2d 809, 815 (N.D. Ill. 2010) (quoting *Davis v. Elite Mortgage Servs.,* 592 F. Supp. 2d 1052, 1058 (N.D. Ill 2009) ("It is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case.") Affirmative defenses will be stricken only when it is clear that the plaintiff would "succeed despite any state of the facts which could be proved in support of the defense." *Williams*, 944 F.2d at 1400 (internal quotation omitted).

### II. Waiver and Estoppel:  Pre-Receiver Conduct of the FDIC

The conduct alleged by FDIC against Defendants involves Defendants' management and control of the Bank, the Bank's investments, and the Bank's investment management procedures during the years leading up to the closure of the Bank and the appointment of the FDIC as receiver.  *See FDIC v. Veluchamy*, -- F.3d. --, 2013 WL 411361 (7th Cir. Feb. 4, 2013) ("The FDIC is most typically known as the federal agency that insures the accounts of a bank's despistors, but it also serves as a bank overseer and regulator.") Using substantially similar (if not identical) language, each of the Defendants has pleaded the affirmative defense of waiver

and estoppel based on the conduct of the FDIC during the regulatory and investigatory phase of the FDIC's examination of the Bank. As pleaded by Defendants, the conduct forming the basis of the waiver and estoppel defenses is conduct that took place prior to the closure of the Bank and appointment of the FDIC as receiver.

The conduct of the FDIC during its pre-receivership regulation of the Bank cannot be grounds for an affirmative defense, because regulatory conduct of the FDIC falls into the "discretionary conduct" exception to the Federal Tort Claims Act (the "FTCA"). *See United States v. Gaubert*, 499 U.S. 315 (1991) (barring claims asserted against a predecessor of the FDIC premised on that agency's regulatory conduct). The *Gaubert* court reviewed the history of the "discretionary function" exception to the FTCA as applied to the Federal Home Loan Bank Board (FHLBB), a savings & loan regulatory agency that merged into the FDIC via FIRREA shortly before the *Gaubert* ruling). *See Gaubert*, 499 U.S. at 318 n.1 (explaining the dissolution of the FHLBB and grant of FHLBB's regulatory authority to the FDIC). *See id.* at 322-24 (reviewing history of the discretionary function exception). Applying the exception to the regulatory conduct of the FHLBB, the *Gaubert* court concluded that "[d]ay-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest" and that "each of the regulatory actions in question involved the kind of policy judgment that the discretionary function exception was designed to shield." *Id*. at 325, 332. Specifically, *Gaubert* held as follows: "If a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324.

While *Gaubert* discussed claims made against the United States, the reasoning of the opinion applies with equal force to affirmative defenses pleaded against a government agency because of that agency's discretionary acts. *See Gallagher*, 1992 WL 370248 at *5 ("Although *Gaubert* involved an affirmative claim against the government while the present motion addresses the affirmative defenses raised in response to a suit brought by the [Resolution Trust Corporation], the jurisprudence following *Gaubert* clearly provides that *Gaubert* is applicable to affirmative defenses."); *see also FDIC v. Wells*, 1995 WL 387580 (N.D. Ill. June 27, 1995) (striking affirmative defenses based in improper pre-closing regulatory conduct by the FDIC); *FDIC v. Cheng*, 832 F. Supp. 181, 186 (N.D. Tex. 1993) (finding "affirmative defenses based on federal regulatory conduct before or after the failure of [bank] legally insufficient")' *FDIC v. Stanley*, 770 F. Supp. 1281, 1309 (N.D. Ind. 1991) (declining to consider regulatory conduct of FDIC in deciding whether to reduce damages because FDIC's actions are discretionary).

Defendants have no response to *Gaubert* or its direct application to the fact that the parties do not dispute that the FDIC was acting in its regulatory capacity during the pre-receivership period. Rather, Defendants argue that the continued assertion of this affirmative defense against the FDIC will not prejudice the FDIC during discovery since the FDIC will need to investigate the regulatory aspects of the case in any event in order to prove its case in chief. But the fact that the area of discovery may be investigated in any event does not alter the benefit of removing the "unnecessary clutter" of legally impermissible affirmative defenses from the case. *See Heller*, 883 F.2d at 1294. Therefore, the affirmative defense of waiver and estoppel based in pre-receivership conduct will be stricken.

FDIC alleges that the affirmative defenses of comparative fault (named contributory negligence by some of the Defendants) and superseding and intervening cause should also be stricken because the paragraphs of these affirmative defenses may encompass pre-receiver conduct. However, none of these affirmative defenses allege anything regarding pre-receivership conduct by the FDIC. Each of these affirmative defenses specifically references the FDIC's conduct in liquidating the assets of the Bank – an activity that necessarily took place after the FDIC took possession of the assets. Because these affirmative defenses do not address pre-receivership conduct, they will be addressed in Section III below.

### III.  Failure to Mitigate, Superseding/Intervening Cause, Comparative Fault: Post-Receiver Conduct (FDIC)

FDIC urges this Court to strike the Defendants' affirmative defenses of failure to mitigate, comparative negligence/fault, and superseding/intervening cause of the FDIC's post-receiver conduct, all on the grounds that such affirmative defenses are not permissible against the FDIC. Defendants rely upon *Federal Deposit Insurance Corporation v. Bierman*, 2 F.3d 1424 (7th Cir. 1993), which barred the pleading of a mitigation of damages defense against the FDIC based on the FDIC's conduct as a receiver. Defendants, however, point to the subsequent United States Supreme Court decision, *O'Melveny & Myers v. Federal Deposit Insurance Corporation*, 512 U.S. 79 (1994), as having overruled *Bierman* or at least cast its holding into serious doubt.[3] In order to address the continuing viability of *Bierman* and its effect on the case

---

[3] Defendants note that FDIC did not discuss, reference, or even cite *O'Melveny* in its opening brief. Another court in this district recently addressed a similar motion to strike affirmative defenses filed by the FDIC, and commented on the FDIC's failure to acknowledge *O'Melveny* in the opening brief in that case as well. *See FDIC v. Spangler, et al.*, 2012 WL 5558941, *5 n.4 (N.D. Ill. November 15, 2012) (Dow, J.). The Court sympathizes with the *Spangler* court's frustration that the *O'Melveny* decision was not fronted by the FDIC. But because the FDIC has taken the position in this case that additional grounds, separate from those raised in *O'Melveny*, support the continued validity of *Bierman*, the FDIC has not omitted contrary and controlling authority by failing to cite *O'Melveny* and the omission of *O'Melveny* from the opening brief does not frustrate discussion of the merits of the affirmative defenses at issue here to the same degree that it appears to have done in *Spangler*.

presently before the Court, a brief summary of the history of *Bierman* and *O'Melveny* is necessary.

In *Bierman*, the Seventh Circuit addressed factual circumstances quite similar to those presently before the Court, namely, whether defendant officers and directors of a failed bank could assert the affirmative defense that the FDIC failed to mitigate damages because it inadequately collected on the accounts of the Bank, and/or improperly disposed of Bank assets, during the FDIC's receivership. *See Bierman*, 2 F.3d at 1438. The Seventh Circuit affirmed on two separate grounds the lower court's determination to strike the affirmative defense of failure to mitigate: first, the Seventh Circuit held that actions of the FDIC, acting as a receiver, can have no effect to mitigate the damages owed by officers and directors of the failed bank, because the FDIC has "no duty" to the officers and directors of the bank. *Id.* at 1439-40. Finding such a duty would not comport with "the congressional scheme" of the FDIC as an insurance fund, because when the FDIC undertakes the management of assets of a failed bank, "it is the duty of the FDIC to manage such assets in order to replenish the insurance fund that has been used to cover the losses allegedly caused by the directors and officers." *Id.* This first rationale has come to be known as the "no duty" rule.

As a separate and alternative ground to the "no duty" rule, the Seventh Ciruict held that the FDIC was performing a "discretionary function" when it disposed of the assets of the bank during receivership, and as such was entitled under the discretionary function exception to the FTCA to be free from affirmative defenses concerning those decisions. *Id.* at 1440-41.

Following the Seventh Circuit's decision in *Bierman*, the Fifth Circuit also affirmed the "no duty" rule and the discretionary function exception with respect to the FDIC as receiver. *See*

*FDIC v. Mijalis*, 15 F.3d 1314, 1323-24 (5th Cir. 1994). Two years after *Bierman*, the Supreme Court in *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994) addressed the affirmative defense of imputation against the FDIC in its capacity as receiver for a failed savings & loan. The FDIC as receiver sued the former counsel of the savings & loan for legal malpractice and breach of fiduciary duty under California law. The law firm asserted the California law affirmative defense that the FDIC stood in the shoes of the savings & loan and therefore any wrongdoing of insiders could be imputed to the FDIC to preclude any claims against the law firm. The Supreme Court framed the issue before it as whether, in a suit by the FDIC in its capacity as a receiver, "it is a federal-law or state-law rule of decision that governs the tort liability of attorneys who provide services to the bank." *O'Melveny*, 512 U.S. at 80-81.

The *O'Melveny* court first noted that "[t]here is no federal general common law" and that the existence of receiverships alone is not a proper basis for "adopting a special federal common-law rule divesting States of the authority over the entire law of imputation." *Id* at 83 (*quoting Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The *O'Melveny* court then turned to the specific application of law to the FDIC when commencing suits in its capacity as a receiver. Reviewing FIRREA, the *O'Melveny* court held that any argument for federal common law supplementing the terms of FIRREA was "demolished" by the presence of specific provisions in FIRREA discussing claims by, and defenses against, the FDIC as receiver – none of which discussed imputation. *Id.* at 86. In light of such specifics, held the *O'Melveny* court, "[t]o create additional 'federal common-law' exceptions is not to 'supplement' [FIRREA], but to alter it." *Id.* at 87. The *O'Melveny* court therefore remanded the case for further proceedings in accordance with California state law.

Following *O'Melveny*, district courts have split regarding whether *O'Melveny* abrogates the "no duty" rule. *Compare, e.g.*, *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 93 F.Supp.2d 300 (W.D.N.Y.2000) (no duty rule abrogated), *FDIC v. Ornstein*, 73 F.Supp.2d 277, 281–85 (E.D.N.Y.1999) (same), *FDIC v. Gladstone*, 44 F.Supp.2d 81, 86–88 (D.Mass.1999) (same), *RTC v. Liebert*, 871 F.Supp. 370, 371–73 (C.D.Cal.1994) (same), *with FDIC v. Healey*, 991 F. Supp. 53, 59–62 (D.Conn.1998) (no duty rule survives), *RTC v. Gravee*, 1995 WL 599056 (N.D. Ill. 1995) (Pallmeyer, J.) (no duty rule and *Bierman* holding survive); *RTC v. Bright*, 157 F.R.D. 397, 400 (N.D.Tex.1994) (no duty rule survives), and *Resolution Trust Corp. v. Sands*, 863 F.Supp. 365, 370 (N.D.Tex.1994) (same). The only circuit opinion to address the "no duty" rule was published four months after *O'Melveny*, but relied on *Bierman* with no mention of *O'Melveny* whatsoever. *See FDIC v. Oldenburg*, 38 F.3d 1119, 1121 (10th Cir. 1994).

Ordinarily, a district court "has no authority to reject a doctrine developed by a higher one." *Olson v. Paine, Weber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986). A district court may depart from appellate precedent only in the limited circumstance in which the lower court is "powerfully convinced" that the higher court would overrule its previous decision at the first available opportunity. *Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). "If … events subsequent to the last decision by the higher court approving the doctrine – especially later decisions by that court, or statutory changes – make it almost certain that the higher court would repudiate the doctrine if given a chance to do so, the lower court is not required to adhere to that doctrine." *Olson*, 806 F.2d at 734.

The Court agrees that the criticisms of the continued validity of a broad "no duty" rule for the FDIC in light of *O'Melveny* may indeed be meritorious. It is undisputed by the parties that the affirmative defenses of mitigation of damages and comparative negligence/fault are valid affirmative defenses under Illinois state law. The *O'Melveny* court's discussion as to why federal common law should not be extended in the context of FIRREA strongly suggests that the portion of *Bierman's* holding grounded in general public policy concerns might not survive post-*O'Melveny* with respect to Illinois-law based affirmative defenses. Therefore, were the "no duty" rule the only ground upon which the *Bierman* court based its holding, the Court would be hesitant to strike Defendants' affirmative defenses that are based in post-receivership conduct by the FDIC.

However, the "no duty" rule was only one of two grounds for the decision to strike the affirmative defense of failure to mitigate in *Bierman*. For the second ground, *Bierman* relied upon *Gaubert* and the discretionary function exception to the FTCA, discussed in Section II above. Specifically, *Bierman* held that the affirmative defenses of mitigation of damages should be stricken because:

> [A]pplying the criteria set forth by the Supreme Court in *Gaubert*, we think it clear that the FDIC was performing a discretionary function. The responsibilities that devolve onto the FDIC when a bank has failed require quick and complex decisionmaking. ***We believe that excepting the FDIC from such affirmative defenses is consonant with the purpose of the discretionary exception to the FTCA.***

*Bierman*, 2 F.3d at 1440-41 (emphasis added). *O'Melveny* did not address *Bierman's* second ground for striking mitigation defenses, the discretionary nature of the FDIC's authority to determine the proper disposition of assets in the course of receivership. In fact, *O'Melveny* did not discuss the FTCA, discretionary actions by agencies, or the *Gaubert* decision at all.

The discretionary power of the FDIC with respect to its disposition of assets has been addressed and affirmed by the Seventh Circuit since the publication of *O'Melveny*. See *Courtney v. Halleran*, 483 F.3d 942 (7th Cir. 2007) (affirming the continuing viability of the FDIC's immunity from suit under the FTCA for its post-receiver decisions regarding the disposition of assets). In affirming Congress's intention to create a broad injunction against court interference with the FDIC's ongoing exercise of its powers as a receiver under 12 U.S.C. § 1821(j), the Seventh Circuit noted that there are specific provisions of FIRREA that permit the FDIC to act in a discretionary manner that is not subject to review. The Seventh Circuit specifically highlighted the FDIC's right under § 1821(d)(2)(G)(i)(II) to "transfer assets or liability without any further approvals." *Id.* at 948.

Therefore, while the portion of *Bierman* grounded in the "no duty" rule might be in serious doubt in light of *O'Melveny*, the alternative ground of *Bierman* based on the Supreme Court's holding in *Gaubert* and the discretionary function exception to the FTCA remains very much viable and reaffirmed through *Courtney*. With the second basis for the *Bierman* holding secure, this Court remains bound by *Bierman*. Therefore, the affirmative defenses of mitigation of damages, comparative fault, and intervening/superseding cause of the conduct of the FTCA are stricken because they improperly challenge the discretionary power of FDIC to maintain and dispose of the Bank's assets post-receivership.

### IV. Causation Defenses, Reservation of Rights[4]

---

[4] FDIC moves to strike the following miscellaneous affirmative defenses: Pacocha: Sixth Affirmative Defense (Lack of Proximate Cause), Second Affirmative Defense (Superseding and Intervening Causes), Eighth Affirmative Defense (Other Defenses); Mahajan: Ninth Affirmative Defense (Other Defenses), Seventh Affirmative Defense (Lack of Proximate Cause), Third Affirmative Defense (Superseding and Intervening Causes); Veluchamy Defendants: Third Affirmative Defense (Superseding and Intervening Causes), Seventh Affirmative Defense (Reservation of Right to Add Affirmative Defenses); Lakner et al: Third Affirmative Defense (Superseding and Intervening Causes); Barth: Second Affirmative Defense (Superseding and Intervening Causes).

Various Defendants have filed affirmative defenses related to causation, such as lack of proximate cause and intervening/superseding cause of general market conditions during the financial downturn in the 2008 and 2009. Proximate cause is an element of the FDIC's case in chief and not properly pleaded as an affirmative defense. *See Bauer v. J.B. Hunt Transport, Inc.*, 150 F.3d 759, 763-64 (7th Cir. 1998) ("In any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury. The element of proximate cause is an element of the *plaintiff's* case. The defendant is not required to plead lack of proximate cause as an affirmative defense."). *See also, Ocean Atl. Dev. Corp. v. Willow Tree Farms, LLC,* 2002 WL 485387 *4 (N.D. Ill. March 29, 2002) ("lack of causation" is not a proper affirmative defense and should be stricken). Striking the affirmative defenses related to lack of proximate cause and/or the presence of an intervening cause by no means bars the defense from asserting that the FDIC has not carried its burden with respect to the element of causation. However, such issues are properly raised at summary judgment and trial, not in the form of an affirmative defense. Therefore, Defendants' affirmative defenses of lack of proximate cause and intervening/superseding cause of general market downturn are stricken.

Finally, the FDIC moves to strike those affirmative defenses that purport to reserve the right to add affirmative defenses at a later date. These affirmative defenses are stricken because they are improper reservations under the Federal Rules. The time to plead affirmative defenses under Federal Rule of Civil Procedure 8 is at the time of answer. *See Castro v. Chicago Housing Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) (*quoting Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997) ("If Rule 8(c) is not to become a nullity, we must not countenance attempts to

invoke [affirmative] defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff.") In the event that any Defendant determines during the course of discovery that an additional affirmative defense should be raised, that Defendant must file a motion seeking leave to amend the answer and affirmative defenses in accordance with the requirements of Federal Rule of Civil Procedure 15.

## CONCLUSION

For the reasons stated herein, FDIC's Motion to Strike Affirmative Defenses is granted.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 12, 2013