**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Mutual Bank, | ) ) ) ) | No. 11 CV 7590 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| AMRISH MAHAJAN, et al., | ) ) ) | July 9, 2014 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the court is the motion of Plaintiff Federal Deposit Insurance Corporation ("FDIC") as receiver for Mutual Bank ("Bank") to compel third-party Mary Hakken-Phillips ("Hakken-Phillips") to testify regarding minutes from the Bank's Board of Directors' meetings. The motion is denied for the following reasons:

**Background**

Previous opinions resolving Defendants' motions to dismiss, *see FDIC v. Mahajan*, No. 11 CV 7590, 2012 WL 3061852, at *1-3 (N.D. Ill. July 26, 2012), and the FDIC's motion to strike, *see FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1135-36 (N.D. Ill. 2013), describe the details of this case's background facts and procedural history. What follows are the facts and allegations most pertinent to the questions presented in the current motion.

According to the FDIC, in November 2009, FDIC representatives interviewed Hakken-Phillips concerning her work as the secretary of the Bank's Board of

Directors and as the administrative assistant to Bank President Amrish Mahajan. (R. 289, Mot. ¶ 1.) In support of its current motion the FDIC submitted an affidavit from Tina Solis, one of the FDIC's attorneys, stating that during the interview Hakken-Phillips described preparing handwritten Board minutes which she then submitted to senior officers. (R. 289-1, Mot., Ex. A ¶¶ 4-5.) According to Attorney Solis's affidavit, Hakken-Phillips said Defendants Mahajan and James Regas altered the minutes to remove references to "certain adverse matters," and that she signed the final minutes "feeling that she had no choice but to do so." (Id. ¶ 4.) The affidavit goes on to say that Hakken-Phillips discussed the Bank's lending and credit administration practices, compiling reports on the Bank's real estate portfolio and loan deficiencies, document shredding at the Bank, and Regas's role in Bank operations. (Id. ¶¶ 5-6.) The FDIC alleges that several weeks after the interview, Hakken-Phillips voluntarily provided the FDIC with her handwritten draft Board minutes and handwritten "diaries" describing tasks, meetings, and communications with the Bank's senior officers. (R. 289, Mot. ¶ 3.)

On October 25, 2011, the FDIC sued Defendants, each of whom was a director, officer, board member, or attorney for the Bank. (See R. 1, Compl.) When the FDIC deposed Hakken-Phillips on October 31, 2013, she chose to invoke the Fifth Amendment in response to every question except those asking for her name, address, and educational background. (See R. 289-7, Mot., Ex. G, Hakken-Phillips Dep.) The FDIC filed the instant motion on June 2, 2014, to compel her testimony regarding the authenticity of the draft minutes, the explication of certain passages

2

in those minutes, and the process of preparing the Bank's final minutes. (R. 289, Mot. ¶ 16.) Hakken-Phillips filed a response on June 19, 2014, in which she requested leave to provide the court with "additional information" regarding the basis of her Fifth Amendment privilege assertion for an *in camera* review. (R. 302, Opp. ¶ 2.) With the court's leave, Hakken-Phillips submitted her "additional information" on June 24, 2014, *ex parte*. (R. 304.) On June 26, 2014, the FDIC filed a reply in support of the current motion. (R. 306, Reply.)

## Analysis

In deciding this motion the court must resolve: (1) whether Hakken-Phillips had a basis for asserting the Fifth Amendment privilege during her deposition; (2) whether she waived that privilege; and (3) whether the Fifth Amendment protects her from having to testify regarding the specific topics at issue in this motion. The court addresses each of these issues in turn.

### A. Basis for Fifth Amendment Privilege

The FDIC argues for the first time in its reply brief that Hakken-Phillips had no basis for asserting the Fifth Amendment privilege against self-incrimination during her October 2013 deposition. (R. 306, Reply at 8.) Setting aside the fact that arguments raised for the first time in a reply brief are waived, *see Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013), Hakken-Phillips does bear the burden of showing that the privilege applies, and the court has discretion to assess the facts underlying her claim of privilege, *see In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 n.5 (7th Cir. 1979); *Shakman v.*

*Democratic Org. of Cook Cnty.*, 920 F. Supp. 2d 881, 888 (N.D. Ill. Jan. 29, 2013). The Fifth Amendment states that "[n]o person shall . . . be compelled in any criminal case to be a witness against [her]self." U.S. Const. amend. V. In other words, when a witness asserts her Fifth Amendment privilege in response to a question, the court must determine whether giving a truthful answer to that question would have some tendency to subject her to criminal liability. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (citations omitted).

The court construes the privilege broadly in favor of the right. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981). The witness need not establish the precise manner in which she will incriminate herself by responding to questions, as this would make the privilege meaningless. *See Hoffman v. United States*, 341 U.S. 479, 486-87 (1951). But it must be evident from the implications of the question, in the setting in which it is asked, that a responsive answer or an explanation for not answering might result in injurious disclosure. *Id.* The protection extends beyond answers that would in themselves support a conviction to encompass responses that would furnish "a link in the chain of evidence" needed to prosecute the witness. *Id.* at 486. In assessing whether the privilege applies, this court must be governed as much by its perception of the case's peculiarities as by the facts. *Id.* at 487.

The court finds that Hakken-Phillips had a valid basis for asserting the Fifth Amendment protection in response to at least some of the questions asked at her

deposition. According to Attorney Solis's affidavit, Hakken-Phillips may have had a role in doctoring Board meeting minutes to remove references to adverse matters. (R. 289-1, Mot., Ex. A ¶ 4.) If this is true, Hakken-Phillips could be exposed to criminal liability under Title 18 of the United States Code. *See, e.g.,* 18 U.S.C. §§ 1005, 1007, 1517 (criminalizing, among other things, false entries and material omissions made by an insured bank's employee or agent with the intent to injure or defraud the bank, and actions taken by bank officers or employees to conceal delinquencies).

Furthermore, as the FDIC points out, in June and July 2009 the FBI interviewed Bank personnel as part of an investigation into the events that led to the Bank's failure. (See R. 289, Mot. ¶¶ 4-6.) Although the pendency of a criminal investigation is insufficient by itself to excuse a witness of her obligation to testify in a civil proceeding, in this case there was a nexus between the risk of criminal conviction and the information the FDIC sought at Hakken-Phillips's deposition. *See Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980). Given the FBI's previous—and perhaps current—interest in the Bank's activities, the hazard of incrimination during the deposition was far from "trifling or imaginary." *See United States v. Apfelbaum*, 445 U.S. 115, 128 (1980). Fifth Amendment protection applies as long as there is a *possibility* of prosecution, regardless of this court's assessment of the *likelihood* of prosecution. *In re Corrugated Container Antitrust Litig.*, 661 F.2d at 1150-1151 (citing *In re Folding Carton Antitrust Litig.*, 609 F.2d at 872). Because the possibility of prosecution existed when Hakken-Phillips

5

appeared at her deposition, the court finds that she had a valid basis for asserting Fifth Amendment protection with regard to at least some of the questions asked by the FDIC.[1]

Before addressing the proper scope of her assertion, the court first turns to the question of waiver because if Hakken-Phillips waived her Fifth Amendment protection as the FDIC argues, then there is no need to determine whether her privilege covered the topics at issue in this motion.

**B.   Waiver of Fifth Amendment Privilege**

A witness can waive her Fifth Amendment right by testifying voluntarily about a subject. *See Mitchell v. United States*, 526 U.S. 314, 321-22 (1999). But waiver "is not to be lightly inferred." *Boim v. Quranic Literacy Inst.*, No. 00 CV 2905, 2004 WL 2700494, at *2 (N.D. Ill. Feb. 9, 2004) (citations and internal quotations omitted). In fact, courts must indulge "every reasonable presumption" against waiver of fundamental constitutional rights. *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004) (citations and internal quotations omitted). Whether the privilege has been waived depends on the particular facts and circumstances surrounding the case. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The FDIC argues that Hakken-Phillips waived her right to invoke the Fifth Amendment when she voluntarily disclosed material information and documents during the FDIC's investigation, despite being aware that a criminal inquiry was

---

[1] In reaching this conclusion the court did not rely on the "additional information" Hakken-Phillips submitted for an *in camera* review. The court finds that the "additional information" lacks adequate factual details to assist the court in ruling on this motion.

6

pending. (R. 289, Mot. at 1-2.) Hakken-Phillips argues in response that waiver cannot be inferred from any testimony given in a separate proceeding, and that her "unsworn, uncounseled" statements did not constitute waiver. (R. 302, Opp. ¶¶ 7, 10.) The FDIC contends in its reply that the single-proceeding analysis is not the law of the Seventh Circuit, and that even if it was, Hakken-Phillips's interviews were part of this same proceeding. (R. 306, Reply at 3-7.) The FDIC also argues that the fact Hakken-Phillips was not represented by counsel during the interviews is not dispositive of whether waiver occurred. (Id. at 7-8.)

Courts in this district have held that while a witness can waive her Fifth Amendment right, this waiver must occur in a "single proceeding." *See, e.g., United States v. Shalash*, No. 11 CR 627, 2013 WL 4820927, at *7 (N.D. Ill. Sept. 10, 2013); *Shakman*, 920 F. Supp. 2d at 888 ("A person who waives the privilege in one proceeding, however, does not thereby waive it in another proceeding."); *Schneider v. Love*, No. 09 CV 3105, 2011 WL 635582, at *2 (N.D. Ill. Feb. 10, 2011) (testimony at previous trial did not prevent witness from declining to testify at a later trial). These courts based their application of the single-proceeding rule on *Mitchell*, which held that "[i]t is well established that a witness, *in a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *See Mitchell*, 526 U.S. at 321 (emphasis added) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)). Although the FDIC contends that the Seventh Circuit has not adopted the single-proceeding analysis, the court finds no reason to deviate from the approach taken

by other courts in this district, and therefore turns to the question of whether the FDIC's interviews of Hakken-Phillips were part of this same proceeding.

The FDIC relies on *Shakman* to argue that the interviews were part of this proceeding because they were "an important part of the investigation leading up to this litigation" and "covered the same subject matter" as the information sought at her deposition. (R. 306, Reply at 4.) In *Shakman*, Cook County was made subject to consent decrees and supplemental relief orders ("SROs") to ensure that it did not unlawfully discriminate in its employment practices. *Shakman*, 920 F. Supp. 2d at 884. As part of the SRO compliance investigation process, an administrator charged with enforcing the SROs conducted several interviews of Doris Gershon, a Cook County employee, during which she described her human resources duties and Cook County's hiring practices. *Id.* at 885-86. Gershon also testified under oath at two administrative hearings about compliance with the consent decrees and SROs. *Id.* at 886. She was later subpoenaed for a deposition as part of the investigation, during which she asserted the Fifth Amendment privilege and refused to answer any questions related to Cook County's employment practices. *Id.* The administrator moved to compel Gershon's testimony, arguing in part that she waived her Fifth Amendment privilege as to questions she already answered during previous interviews. *Id.* at 887. The court granted the administrator's motion on the grounds that Gershon did not have a reasonable fear of incrimination sufficient for asserting the Fifth Amendment privilege. *Id.* at 892-93. The court also found

that even if she did, she waived her privilege during the pre-deposition interviews because they were "part of this same proceeding." *Id.* at 893.

Although at first blush *Shakman* appears to support the FDIC's position, the FDIC's reliance on *Shakman* is misplaced. First, Gershon's interviews took place within the specific context of the "single, ongoing Shakman investigation" occurring pursuant to multiple consent decrees and SROs from a pre-existing civil suit. *Id.*; *see Shakman v. Democratic Org. of Cook Cnty*, 310 F. Supp. 1398 (N.D. Ill. 1969). In other words, the interviews were conducted as "part of the procedures established by the *Shakman* SROs" and carried out as part of "the ongoing investigation *under the auspices of this civil case.*" *See Shakman*, 920 F. Supp. 2d at 893-94 (emphasis added). The circumstances here are distinguishable because Hakken-Phillips made statements and disclosed documents prior to this suit even being filed, and did so in a context outside of any process or procedure established by this litigation.

Second, the FDIC misconstrues *Shakman* by contending that the court found waiver in part because "the questions posed at the deposition covered the same subject matter as the interviews." (R. 306, Reply at 4 (citing *Shakman*, 920 F. Supp. 2d at 893).) But the court in *Shakman* specifically excluded from waiver Gershon's sworn testimony at two administrative hearings, even though they "may have concerned similar subject matter as that in some *Shakman* investigations," because the court concluded that the hearings were "distinct enough to be deemed separate" from the *Shakman* interviews. *Shakman*, 920 F. Supp. 2d at 893. While

testimony's subject matter is relevant for determining the scope of waiver once it occurs, the question of whether a proceeding is separate enough to fall outside of the single-proceeding requirement does not turn on the testimony's substance. The fact that the FDIC interviews concerned the same topics and facts at issue in this case does not necessarily mean that those interviews were part of this proceeding.

The FDIC's efforts to distinguish cases contrary to its position are similarly unavailing. While the FDIC is correct that courts have deemed proceedings to be distinct when they involve different parties and different issues, courts have also found certain pre-litigation proceedings involving the same parties and issues to be separate for Fifth Amendment purposes. For example, the FDIC cites to *In re Corrugated Container Antitrust Litigation*, 661 F.2d at 1147, in which the court held that a witness who testified before a grand jury about price-fixing could still invoke the Fifth Amendment in a subsequent civil action arising from the same facts. In reaching its decision the court found that the grand-jury proceeding and the civil proceeding were separate proceedings. *See In re Corrugated Container Antitrust Litigation* 661 F.2d at 1155 n.15. The court also noted that if the deponent had repeated his grand-jury testimony in the civil proceeding he would have faced "very real waiver problems," which is precisely why Hakken-Phillips asserted her privilege during the deposition in this case. *See id.* at 1158 (internal quotations omitted). Rather than refuting that the interviews were part of a separate proceeding, *In re Corrugated Container Antitrust Litigation* instead supports Hakken-Phillips's position.

The FDIC also attempts to distinguish *Slutzker v. Johnson*, 393 F.3d 373 (3d Cir. 2004), in which the Third Circuit found that a witness's testimony at a coroner's inquest did not waive her right to invoke her Fifth Amendment privilege at the subsequent criminal trial because the inquest was a separate proceeding. *Id.* at 388-89. The FDIC implies in its brief that the court based its decision on the length of time that elapsed between the inquest and the trial, (R. 306, Reply at 5), but the court only mentioned the time period in passing, *see Slutzer*, 393 F.3d at 389. In its waiver analysis, the court focused on the single-proceeding rule and concluded that it "would seem to apply with great force to the coroner's inquest," because the inquest constituted a separate proceeding. *Id.*

The FDIC's reliance on *Boim* and *Glenwood Halsted LLC v. Village of Glenwood,* No. 11 CV 6772, 2014 WL 2862613 (N.D. Ill. June 24, 2014), is also misguided. The FDIC argues that in these cases, privilege was preserved for the deponents because they were unaware of potential criminal inquiries when they first made disclosures, whereas here Hakken-Phillips knew of a pending criminal investigation at the time she participated in the interviews. (R. 306, Reply at 5-6.) But whether Hakken-Phillips may have known of potential criminal liability during the interviews speaks to her basis for asserting the Fifth Amendment privilege, not whether the proceedings in this case were separate. The FDIC's point simply highlights that the deponents in *Boim* and *Glenwood* lacked a basis for asserting the privilege during their initial disclosures, and therefore could not have waived their privilege as to subsequent testimony.

11

The FDIC also mischaracterizes *Aldridge Electric Inc. v. Fidelity & Deposit Co.*, No. 04 CV 4021, 2006 WL 2536687 (N.D. Ill. Aug. 31, 2006), by arguing that in finding a deponent waived her Fifth Amendment privilege, it was "irrelevant" to the court "that the deposition and the sworn statement were part of separate proceedings." (See R. 306, Reply at 6.) But the court in *Aldridge* held that the witness waived the privilege by voluntarily *reconfirming* the information in her previous sworn statement during a deposition in that civil proceeding. *See Aldridge*, 2006 WL 2536687, at *2. The witness authenticated her previous sworn statement, verified its accuracy, and agreed to submit to further deposition questions, thereby waiving the Fifth Amendment protection over her previous statement. *See id.* The court did not even address the single-proceeding rule because the witness's own testimony in that same proceeding constituted waiver—a result the Seventh Circuit warned against in *In re Corrugated Container Antitrust Litigation*, 661 F.2d at 1147. Unlike the witness in *Aldridge*, Hakken-Phillips effectively avoided waiver by asserting the Fifth Amendment protection in her deposition and refusing to answer questions regarding the information she provided during the FDIC interviews.

Although the court finds no waiver on the grounds that the interviews were not part of the current proceeding, the court briefly addresses Hakken-Phillips's other arguments against waiver for the sake of thoroughness. Hakken-Phillips contends that the fact she was not represented by counsel during the FDIC interviews precludes waiver, comparing herself to a criminal defendant whose

waiver is not "knowing and intelligent." (R. 302, Opp. ¶¶ 12, 15.)  But as the FDIC points out, the interviews did not occur in a custodial interrogation setting and the presence of counsel is not necessary for waiver to be effective.  *See, e.g., Garner v. United States*, 424 U.S. 648, 655 n. 9 (1976) ("[W]e recently have made clear that an individual may lose the benefit of the privilege without making a knowing and intelligent waiver.").  Whether Hakken-Phillips was uncounseled during her interviews is therefore not dispositive of whether waiver occurred.

Hakken-Phillips also makes passive references to the fact that her statements were "unsworn."  (R. 302, Opp. ¶¶ 10-11, 15.)  While this may have formed a basis for arguing that Fifth Amendment privilege did not apply in the interviews and therefore could not be waived, her argument on this point is undeveloped.  A party cannot merely "mention a possible argument in the most skeletal way, leaving the court to do counsel's work[.]"  *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 189-190 (7th Cir. 2011) (quotations and citations omitted).  Hakken-Phillips failed to develop her argument, so the court will not consider the fact that her testimony was unsworn.  *See, e.g., United States v. Courtright*, 632 F.3d 363, 370 (7th Cir. 2011) ("[W]e are not in the business of formulating arguments for the parties."); *White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them[.]").

## C. Scope of Fifth Amendment Privilege

Because this court finds that Hakken-Phillips had a basis for asserting the Fifth Amendment protection during her deposition and that she did not waive that privilege, the court next addresses the proper scope of her assertions. In order for the privilege to apply to a line of questioning, Hakken-Phillips needs to have a reasonable fear and not only a "fanciful belief" that she could face prosecution by answering the questions truthfully. *See In re Corrugated Container Antitrust Litig.*, 661 F.2d at 1151. The danger of incrimination cannot just be a remote and speculative possibility. *See Wachovia Securities, LLC v. Neuhauser*, No. 04 CV 3082, 2011 WL 1465653, at *2 (N.D. Ill. April 18, 2011) (quoting *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980)) (quotations omitted). Civil litigants also cannot invoke the Fifth Amendment as an obstructionist tactic, *Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005), and the Fifth Amendment does not provide carte blanche to refuse to answer all questions, *Shakman*, 920 F. Supp. 2d at 887 (citing *Hoffman*, 341 U.S. at 486).

Here the FDIC only seeks to compel Hakken-Phillips's testimony regarding the authenticity of draft minutes, certain passages in those minutes, and the process of preparing the final minutes. (R. 289, Mot. ¶ 16.) This court finds that Hakken-Phillips properly asserted the Fifth Amendment protection in response to questions asking her to authenticate the draft minutes. While there is no danger in authenticating an innocuous document, authentication can be incriminating when the contents of the document tend to incriminate. *See Butcher v. Bailey*, 753

14

F.2d 465, 470 (6th Cir. 1985). For example, if the contents of the draft meeting minutes tend to show that Hakken-Phillips made material changes to the drafts such that the final minutes constituted false entries, then authenticating the draft minutes would provide "a link in the chain of evidence needed to prosecute" Hakken-Phillips. *See Hoffman*, 341 U.S. at 486; 18 U.S.C. § 1005. The draft and final minutes might also indicate, through their inconsistency, that the Bank's officers or employees concealed delinquencies or caused "false or misleading statements" to be made during an FDIC examination. *See* 18 U.S.C. §§ 1005, 1007. Given the particular facts in this case, it is apparent that authenticating the draft minutes could expose Hakken-Phillips to criminal liability.

The same reasoning applies to testimony regarding explanations of "certain passages" in the meeting minutes and how the minutes were finalized. It is difficult to imagine how Hakken-Phillips could explain their contents without admitting that she had a role in authoring them or at least has some personal knowledge regarding their creation, thereby exposing herself to potential prosecution. As for the process that led to the preparation of the final minutes, the danger of incrimination is especially pronounced. The threat of criminal liability, in this court's view of the circumstances in this case, revolves around whether Hakken-Phillips altered the meeting minutes during the finalization process at the direction of, or in coordination with, Defendants Mahajan and Regas. Questions about how the final minutes were prepared would therefore go to the heart of Hakken-Phillips's potential criminal liability. Accordingly, the court finds that Hakken-

Phillips's Fifth Amendment privilege assertion was valid as to the testimony sought in the current motion.

## Conclusion

For the foregoing reasons, the FDIC's motion to compel is denied.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**