UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR MUTUAL BANK OF HARVEY, | ) ) ) ) | No. 11 CV 7590 |
| Plaintiff, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| AMRISH MAHAJAN, *et al.*, | ) ) ) | August 7, 2015 |
| Defendants. | ) | |

**MEMORANDUM REPORT and RECOMMENDATION**

Before the court is Kenneth J. Conner's motion to intervene referred to this court pursuant to Local Rule 72.1. (R. 382.) Conner argues that his intervention into this lawsuit is proper either as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, by permission under Rule 24(b). Conner seeks to intervene in this case because he became aware of an agreement between the parties to settle this matter[1] and he believes he is owed a portion of the settlement proceeds as compensation as a whistleblower under the False Claims Act, *see* 31 U.S.C. § 3730. In June 2011, several months before the Federal Deposit Insurance Corporation filed this suit as receiver for Mutual Bank of Harvey ("FDIC-R"), Conner filed a *qui tam* action (the "Conner suit") against several of the defendants in this lawsuit. Conner alleges that he recently learned that FDIC-R did not intend

---

[1] The court has been advised that the parties have reached an agreement to resolve all matters between the parties in this action. However, as far as the court is aware, the agreement has not been executed by the parties and is uncertain whether there is an enforceable agreement.

to compensate him with a whistleblower reward and, as a result, seeks to intervene in this action to protect his financial interest. FDIC-R opposes Conner's intervention. For the following reasons, this court reports and recommends that Conner's motion be denied:

**Facts**

The facts relevant to this motion span a decade and involve two different cases in the Northern District of Illinois. For approximately seven years, Conner alleges[2] that he worked at the Mutual Bank of Harvey ("the Bank"). (R. 374, Mot. to Intervene at 2.) And, in his capacity as an employee, he reviewed appraisals of property securing various loans issued by the Bank. (Id.) Sometime in 2005, Conner alleges that he discovered a scheme whereby the Bank intentionally relied upon inflated appraisal evaluations performed by Adams Valuation Corporation in order to drive up the perceived value of its assets, thereby creating the impression that the Bank was better capitalized than it actually was. (Id.) Then, Conner says, the Bank traded on the distorted image of its capitalization to achieve a better

---

[2] The Seventh Circuit directs that "[i]n evaluating [a] motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint." *Lake Investors Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983). However, Conner, the putative intervenor, did not file a cross-complaint as required by Fed. R. Civ. P. 24(c). Although the requirements of Rule 24(c) are, according to the Seventh Circuit, "unambiguous," courts generally recognize that there is some "flexibility" in a district court's treatment of a procedurally defective motion to intervene. *See Retired Chi. Police Ass'n v. City of Chic.*, 7 F.3d 584, 595 (7th Cir. 1993) (applying an abuse of discretion standard in affirming the district court's decision that refused to entertain two procedurally defective intervention motions filed in violation of Rule 24(c)). Because the FDIC-R did not raise this procedural defect in their opposition, the court addresses the motion on its merits.

2

Capital adequacy, Assets, Management capability, Earnings, Liquidity, Sensitivity ("CAMELS") score.[3] (Id.)

Conner alleges that the Bank financially benefitted from this asset valuation scheme because it received a better CAMELS score, which in turn meant that it paid less than it otherwise would have for deposit insurance to the FDIC. (R. 374, Mot. to Intervene at 2.) Conner's assertions suggest that something at the Bank was indeed amiss. From 2004 through 2008, the FDIC assigned the Bank a CAMELS score of 2, meaning that it was considered to be "fundamentally sound." (Id.) Yet, in June 2008, the FDIC downgraded the Bank to a score of 5, the lowest possible classification, which is reserved for institutions "exhibit[ing] extremely unsafe and unsound practices or conditions . . . [and] inadequate risk management practices relative to the institution's size, complexity, and risk profile." (Id.) And barely more than a year later, in July 2009, the Illinois Department of Financial and Professional Regulation ("IDFPR") shuttered the Bank and named the FDIC as its receiver. (Id. at 3.)

In light of what he perceived to be a fraud scheme, but after FDIC-R was appointed by the IDFPR as receiver for the Bank, Conner on June 30, 2011 filed a *qui tam* action under seal pursuant to the False Claims Act. (R. 383, Pl.'s Br. at 3.) The Conner suit, *United States ex rel. Conner v. Veluchamy, et al.*, No. 11 CV 4458

---

[3] CAMELS is a commonly used acronym in the banking community to describe the six most important components used by the FDIC to assess a financial institution's condition and operations. *See* https://www.fdic.gov/regulations/laws/rules/5000-900.html (last visited August 7, 2015). A CAMELS score is a composite rating under the Uniform Financial Institutions Ratings System which was adopted by the Federal Financial Institutions Examination Council in November 1979. (Id.)

(N.D. Ill.), sought recovery against certain directors of the Bank, the Adams Valuation Corp., and Douglas Adams (collectively, "the Conner defendants") for violating the False Claims Act. (Id.) The Conner suit alleged a fraud scheme perpetrated by the Conner defendants and sought, as damages, a statutory penalty for each false claim, more than $32 million for unpaid deposit insurance premiums, and approximately $1 billion in losses to the insurance fund, from which Conner would be entitled to a whistleblower reward. (R. 374, Mot. to Intervene at 4; *United States ex rel. Conner,* No. 11 CV 4458, Dkt. 8, Am. Compl. at ¶ 108.) While the Conner suit was still under seal, two of the Conner defendants, Pethinaidu Veluchamy and Parameswari Veluchamy, filed for bankruptcy protection. (Id.) Based on the Veluchamys' bankruptcy case, together with a looming secured creditor's claim of $43 million, Conner concluded that he was unlikely to recover a substantial reward in the Conner suit. (Id.) The United States Department of Justice interviewed Conner on October 7, 2011, but ultimately declined to prosecute the *qui tam* action. (Id.)

On October 25, 2011, while the Conner suit was still under seal, FDIC-R filed this lawsuit against 13 defendants, including 10 former directors of the Bank, 2 former officers of the Bank, and the law firm of Regas, Frezadas & Dallas, LLP. (R. 383, Pl.'s Resp., Ex. 3, Am. Compl. at ¶¶ 2-4.) In its capacity as the Bank's receiver, the FDIC-R sought to recover $115 million plus interest in connection with 12 loans the Bank made, $10.5 million for improper dividend payments the Bank made, millions for corporate waste, and millions from Regas, Frezadas & Dallas in

4

the form of disgorgement of profits and other damages relating to breach of fiduciary duties to the Bank. (R. 104, Am. Compl. at ¶¶ 145, 150, 156, 160, 165, 171, 176, 181, 186, 192, 197.)

Years passed while the Conner case and this case proceeded separately. Then, in January 2015, Conner filed a motion in the *qui tam* case to consolidate this case with the *qui tam* case as related cases. The FDIC-R opposed the motion, (No. 11 CV 4458, Dkt. 216), and Conner later withdrew the motion, (id., Dkt. 224), before the assigned District Judge ruled on the motion. In June 2015, Conner learned that the FDIC-R was engaged in negotiations to resolve this lawsuit, and alleges that the FDIC-R "informed" him that it did not intend to pay him a "whistleblower reward" as contemplated by the False Claims Act. Claiming that he is entitled to a reward under the False Claims Act, Conner moves to intervene in this case, either as of right under Rule 24(a) or, in the alternative, with permission of the court under Rule 24(b). According to Conner, "[t]he FDIC Lawsuit alleged that the damages caused by the Fraud Scheme were the result of the Defendants' negligent review of loan applications, at least in part so that the FDIC could recover from the proceeds of the Bank's director's and officer's [sic] insurance policy." (R. 374, Mot. to Intervene at 4-5.)

**Analysis**

Whether a party should be allowed to intervene as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure. Rule 24(a) specifies four requirements: (i) timeliness; (ii) a claim or interest relating to "the property or

5

transaction that is the subject of the action"; (iii) that the putative intervenor be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (iv) that the current parties to the action do not adequately represent the movant's interests. *See* Fed. R. Civ. P. 24(a). The Supreme Court teaches that a putative intervenor's burden is met if it "shows that representation of [its] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n.10 (1972). Permissive intervention is governed by Rule 24(b) and states that a nonparty may intervene with permission of the court where it timely petitions based on a claim or defense that shares common questions of law or fact with the case in question.

### A. Timeliness of the Motion to Intervene

Motions to intervene, both as of right under Rule 24(a) and by permission under Rule 24(b), must be timely filed. The Seventh Circuit places great emphasis on timeliness, a criterion that it analyzes with yet another four-factor test:

> The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute. We look to four factors to determine whether a motion is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances."

*Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797-98 (7th Cir. 2013) (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)). A district court's ruling on the timeliness of a motion to intervene is

discretionary, and will be upheld on appeal absent an abuse of that discretion. *B.H. by Pierce v. Murphy*, 984 F.2d 196, 200 (7th Cir. 1993) ("Abuse of discretion is . . . the standard for evaluating the court's denial of intervention of right on the grounds of untimeliness.").

To determine whether Conner's motion was timely filed, the court analyzes the four considerations identified by the Seventh Circuit. The first question is the length of time that Conner knew or should have known of his interest in the case. Conner concedes that he "has known that he has an interest in [this case] for several years," but nonetheless argues that he "did not discover until [June 2015] that the FDIC intended to deprive him of that interest." (R. 385, Conner Reply at 7.) In other words, Conner argues that he assumed the FDIC-R was protecting his interest in the lawsuit for many years, and just two weeks after learning otherwise, sought to intervene. But the Seventh Circuit's direction to consider "interest," *see B.H. by* Pierce, 984 F.2d at 200, as a standalone factor is untethered to *perceptions* about whether another entity might be protecting it, or how well it is being protected. Indeed, the Seventh Circuit teaches that "[t]he purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2000) (quoting *Sokaogon Chippewa Cmty.*, 214 F.3d at 949 (internal quotations omitted)). Put plainly, the Seventh Circuit does not instruct courts to consider whether putative intervenors knew or should have known that their rights were not adequately protected, but rather whether they had an interest at all. *See*

7

*Grochocinski*, 719 F.3d at 797-98.  Applying the reasoning of the Seventh Circuit to the facts at hand, Conner should have moved to intervene in this lawsuit as soon as he discovered his interest existed, not when he learned that his interest was shakier than he might have once thought it to be.  At the very least, Conner's own attempt to consolidate this case with his *qui tam* case as related cases, *see U.S. ex rel. Conner,* No. 11 CV 4458, Dkt. 197, indicates that in January 2015, months before he sought to intervene in this case, Conner was taking steps in an attempt to safeguard his whistleblower reward.

Furthermore, Conner has been on notice about the FDIC-R's position since at least February 2015, undermining his allegation that he did not discover the FDIC-R had no intention of obtaining a recovery for him until the following June.  Merely glancing at the section subheadings of the FDIC-R's February 11, 2015 opposition brief to Conner's motion to consolidate the two cases warns the reader that Conner and the FDIC-R have very different ideas about their respective cases.  *See id.,* Dkt. 216 (e.g., "The parties are different"; "The transactions are different"; "The damages are different").  And yet, Conner withdrew his motion to consolidate and made no effort to assert his rights in this litigation for an additional four months.  That fact, in conjunction with Conner's concession that he was aware of this lawsuit for a period of years, and in light of *Grochocinski* and other Seventh Circuit cases, demonstrates to the court that Conner's motion to intervene is untimely.

Perhaps realizing that neither his motion nor his reply made a compelling case for timeliness, Conner filed a supplement to his reply in which he cites

8

*Crawford v. Equifax Payments Services, Inc.*, 201 F.3d 877, 880 (7th Cir. 2000), to argue that his reasonable belief about the *adequacy* of the FDIC-R's representation of his interests that makes his intervention timely. (R. 386, Conner Supp. Reply at 2.) Stretching *Crawford* as far as it will go, Conner argues that a non-party "rarely will suspect a shortfall in the adequacy of representation before learning of the terms of a (potentially inadequate) settlement," therefore he could not have learned about the inadequacy of his representation by the FDIC-R until it told him that it did not think he was entitled to the settlement proceeds. (Id. (citing *Crawford*, 201 F.3d at 880-81).) But the differences between *Crawford*, a class action with designated representative parties who have fiduciary duties to unnamed parties, and this case, a receivership action brought on behalf of the Bank, not the United States government, are obvious. Here, Conner does not make any serious showing that the Bank owes a fiduciary obligation to him in the receivership action litigated by the FDIC-R. And, for the same reasons that Conner does not have an interest in this litigation, discussed *infra*, the arguments raised in the supplement are unpersuasive.

**B. Conner's Claim to an Interest in this Litigation**

Although failing any one of the requirements of Rule 24(a), such as timeliness, is fatal to intervention, another factor also warrants some discussion: whether Conner in fact has a legally protectable interest in any settlement money the FDIC-R may recover in this action. Much of this court's analysis of the timeliness of Conner's motion to intervene presupposes that Conner has an

9

identifiable and protectable interest in this litigation, but the parties disagree about whether that is so. Conner alleges that the FDIC is an agency of the United States, that it is essentially the same "Government" that declined to intervene in the Conner suit, and that it has impermissibly refused to pay him for an "alternate remedy." (R. 385, Conner Reply at 7-9.)

Relying heavily on *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007), Conner maintains that he is entitled to collect from what he claims is an alternate remedy. *Id.* In *Bledsoe*, the Sixth Circuit construed 31 U.S.C. § 3730(c)(5) of the False Claims Act to mean that the government's intervention in a *qui tam* suit was not a prerequisite to a relator's entitlement to proceeds of an alternate remedy brought by the government. *Bledsoe*, 342 F.3d at 647. But Conner's characterization of this case as "indistinguishable" from *Bledsoe*, (R. 385, Conner Reply at 11), is an overstatement. In *Bledsoe*, there was no doubt that the government, as contemplated by § 3730, was indeed seeking a civil penalty based on the same wrongdoing alleged by the relator. *Bledsoe*, 342 F.3d at 647. Instead, the *Bledsoe* decision turned on whether it was acceptable for the government to enter into a settlement for civil penalties and to exclude the relator from that settlement by arguing that it had not done anything to impair the relator's individual right to recover from the defendants in a separate civil lawsuit. *Id.* at 650. However, the critical issue in this case—whether a governmental agency pursuing the rights of a corporation in receivership is the "government" within the meaning of § 3730—was not litigated in *Bledsoe*.

10

Conner argues that FDIC-R is the "government" as contemplated by § 3730 of the False Claims Act because the FDIC is, after all, a government agency. (R. 385, Conner Reply at 7-8.) Section 3730 of the False Claims Act states in pertinent part:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5). The resolution of this question depends upon whether § 3730 applies to the FDIC-R in this litigation. If it does not, the False Claims Act is not implicated and Conner has no protectable interest that would justify his intervention here even if his motion were timely filed. (See id.) Conner highlights the FDIC-R's own pleading stating that federal courts have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1345. (Id. at 8 (citing R. 104, Am. Compl. at ¶ 25).) Indeed, 28 U.S.C. § 1345 confers original jurisdiction "of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." And, to confirm this, Conner points to 12 U.S.C. § 1819, which states that the FDIC, "in any capacity, shall be an agency of the United States for purposes of section 1345 and Title 28."

But this argument has a serious flaw because it assumes the truth of something that Conner makes no effort to support. More specifically, Conner's attention to whether the FDIC is an agency within the definition of its enabling statute or through its jurisdictional statement in the pleadings ignores larger questions relating to the differences between the Conner suit and this suit, both in

11

terms of the FDIC's status as receiver for the Bank and in other more general ways. Moreover, Conner does not identify any authority finding that a litigant that is an agency for the purpose of federal jurisdiction is therefore estopped from asserting more nuanced legal rights, like receivership, or in this case the rights of a different corporate entity.

Conner also avoids grappling with the two largest problems with his argument: (1) those posed by the federal statute governing the FDIC's powers when it is acting as a receiver; and (2) the Supreme Court's interpretation of that statute. On the first point, 12 U.S.C. § 1821(c)(3)(C) specifies that the FDIC "[w]hen acting as conservator or receiver . . . shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of the Corporation's rights, powers, and privileges." On the second point, the Supreme Court found in *O'Melveny & Myers v. Federal Deposit Insurance Corp.*, 512 U.S. 79 (1994), that 12 U.S.C. § 1821(d)(2)(A)(i), the statute governing the FDIC's legal status when acting as a receiver, provides that the FDIC "steps into the shoes" of the failed corporate entity. 512 U.S. at 85-86 (quoting *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 585 (1989)). And the Seventh Circuit has previously explained that the FDIC essentially has a dual capacity because "[a]n action against directors who allegedly have breached their duties to the bank is an asset purchased by the FDIC in its corporate capacity," *F.D.I.C. v. Bierman*, 2 F.3d 1424, 1425 (7th Cir. 1993), but once it is actually litigating, "FDIC-Receiver steps into the shoes of the failed bank and is bound by the rules that the bank itself would

12

encounter in litigation," *Fed. Deposit Insurance Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004). Conner makes no attempt to offer an explanation for why these authorities do not foreclose his theory.

Meanwhile, for its part, the FDIC-R asserts that it is not the "government" within the meaning of the False Claims Act, that the current litigation is not an "alternate remedy," and that numerous other factual and legal differences between this suit and the Conner suit make intervention inappropriate. (R. 383, Pl.'s Br. at 7.) The FDIC-R argues, convincingly, that the intersection of 12 U.S.C. § 1821(c)(3)(C) and the Supreme Court's interpretation of that statute through *O'Melveny & Myers* puts the FDIC-R into the legal shoes of the Bank. And, in litigating as the Bank, the FDIC-R is not seeking a civil penalty for wrongdoing, but is instead attempting to discharge its responsibilities to pursue the Bank's litigation assets for an orderly liquidation and distribution among the Bank's creditors. (R. 383, Pl.'s Resp. at 6-11.) Accordingly, the court finds that Conner does not have a legally protectable interest in any settlement money the FDIC-R may recover in this case.

### C. Permissive Intervention

In the alternative, Conner argues that he should be allowed to intervene in this lawsuit by permission of the court. Permissive intervention is governed by Rule 24(b) and is "wholly discretionary" but also contains a timeliness requirement. *Sokaogon Chippewa Cmty.*, 214 F.3d at 949. In the same vein, permissive intervention should be denied "if it would unduly delay or prejudice the adjudication


encounter in litigation," *Fed. Deposit Insurance Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004). Conner makes no attempt to offer an explanation for why these authorities do not foreclose his theory.

Meanwhile, for its part, the FDIC-R asserts that it is not the "government" within the meaning of the False Claims Act, that the current litigation is not an "alternate remedy," and that numerous other factual and legal differences between this suit and the Conner suit make intervention inappropriate. (R. 383, Pl.'s Br. at 7.) The FDIC-R argues, convincingly, that the intersection of 12 U.S.C. § 1821(c)(3)(C) and the Supreme Court's interpretation of that statute through *O'Melveny & Myers* puts the FDIC-R into the legal shoes of the Bank. And, in litigating as the Bank, the FDIC-R is not seeking a civil penalty for wrongdoing, but is instead attempting to discharge its responsibilities to pursue the Bank's litigation assets for an orderly liquidation and distribution among the Bank's creditors. (R. 383, Pl.'s Resp. at 6-11.) Accordingly, the court finds that Conner does not have a legally protectable interest in any settlement money the FDIC-R may recover in this case.

### C. Permissive Intervention

In the alternative, Conner argues that he should be allowed to intervene in this lawsuit by permission of the court. Permissive intervention is governed by Rule 24(b) and is "wholly discretionary" but also contains a timeliness requirement. *Sokaogon Chippewa Cmty.*, 214 F.3d at 949. In the same vein, permissive intervention should be denied "if it would unduly delay or prejudice the adjudication

of the rights of the original parties." *Southmark Corp. v. Cagan*, 950 F.2d 416. But because Conner's motion is untimely for purposes of Rule 24(b) intervention for the same reasons already explained in its discussion of Rule 24(a), permissive intervention is not appropriate here. Conner has known about this litigation for years and yet did not seek intervention until he learned that the FDIC-R did not intend to pay him any portion of the settlement. There is no evidence or even a suggestion that the FDIC ever represented to Conner that it would share the proceeds recovered in this case with him. The FDIC-R correctly argues that it is not "the government" within the meaning of the False Claims Act, meaning that Conner does not even have a protectable interest in this litigation. Having found that Conner has no right to intervene in this lawsuit under Rule 24(a) on grounds of timeliness, the court also finds the permissive intervention request untimely. And, even if it were timely, Conner has failed to demonstrate that he meets the requirements of Rule 24(b)(1)(B) because he cannot show that he has any claim that would entitle him to recovery of the Bank's litigation assets.

## Conclusion

For the foregoing reasons, the court respectfully recommends that Conner's motion to intervene be denied. Conner and the parties have 14 days from the date of service of this court's Memorandum Report and Recommendation to file objections with the assigned District Judge. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to timely object constitutes a waiver of the right to appeal. *Tuminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**